**Gary BAERT, Plaintiff–Appellant,**

v.

**EUCLID BEVERAGE, LIMITED, Defendant–Appellee.**

**No. 97–1474.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1997.

Decided July 10, 1998.

Rehearing Denied Aug. 10, 1998.

Stephen G. Daday (argued), Stitt, Klein, Daday & Aretos, Arlington Heights, IL, for Plaintiff–Appellant.

William R. Sullivan, Jr., Terrence T. Creamer (argued), Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Defendant–Appellee.

Before FLAUM, RIPPLE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Gary Baert, a truck driver who lost his job when he was diagnosed with insulin-dependent diabetes, sued his employer under the Americans With Disabilities Act for failing to reasonably accommodate him. The district court granted summary judgment in favor of the defendant, finding that Baert was not a "qualified individual" as defined by the ADA. Although we agree that Baert was no longer qualified for his job as a truck driver due to federal and state laws which prohibited him from holding a commercial driver's license, we reverse because he may have been a qualified individual with respect to other positions which the employer could have offered as a reasonable accommodation.

## I.

Gary Baert was a Route Driver Salesman for Euclid Beverage, Ltd, at the time he was diagnosed with insulin-dependent diabetes.[1] In that position, Baert drove a 32–ton truck to deliver beer to retail customers. Federal and state regulations required Baert to hold a commercial driver's license in order to drive a truck of that size, but after his diagnosis, those same regulations prohibited him from holding the necessary license. *See* 49 C.F.R. §§ 383.5, 383.23, 383.71; *see also* 49

C.F.R. § 391.41 ("[a] person is physically qualified to drive a commercial motor vehicle if that person … [h]as no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control"); 625 ILCS 5/18b–105(b)(c)(7) (adopting federal regulation 49 C.F.R § 391.41 in whole, with an exception for certain intrastate drivers who were insulin-dependent diabetics before the federal regulation went into effect in 1986). In January 1993, shortly after his diagnosis, Euclid placed Baert on medical leave status. After one year of leave, Euclid terminated Baert and offered him a job as a Warehouseman at a substantially reduced salary and with a loss of seniority.[2] Baert responded to the offer by suing Euclid under the Americans With Disabilities Act for discrimination and for failing to reasonably accommodate his disability.[3]

Euclid moved for summary judgment and the district court granted the motion. *Baert v. Euclid Beverage Ltd.*, 954 F.Supp. 170 (N.D.Ill.1997). The district court found that Baert was not a "qualified individual" as defined by the ADA because federal and state law prohibited him from holding a commercial driver's license, a necessary prerequisite to the job of Driver. The court also determined that, even assuming Baert was disabled, Euclid fulfilled its obligation to reasonably accommodate Baert by offering him the Warehouseman position at the end of his year of medical leave. The court rejected Baert's claim that the company should have accommodated him by offering him the position of Helper or Warehouseman much earlier, which would have allowed him to retain

---

1. We will refer to this position as the "Driver" job hereafter.

2. Euclid denies that it terminated Baert until after he refused the Warehouseman position. However, Baert is entitled to all reasonable inferences on summary judgment, and Baert has come forward with a document that Euclid asked him to sign acknowledging that he was being terminated pursuant to the collective bargaining agreement. A reasonable jury could infer from this document that Euclid terminated Baert and then offered to rehire him as a Warehouseman.

3. Although Baert frames his claim in terms of both failure to accommodate and disparate treat-

ment, his claim is best understood as one for failure to accommodate, and that is how the parties treat it in the briefs. We need not apply the *McDonnell–Douglas* framework to his claim as such. *Compare DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir.1995) (specifying the *prima facie* case for disparate treatment under the ADA and applying the *McDonnell–Douglas* burden shifting framework), and *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283–84 (7th Cir.1996) (finding the *McDonnell–Douglas* framework inapplicable and inappropriate for analyzing reasonable accommodation claims, which are direct proof claims).

his seniority.[4]

## II.

■ We review *de novo* the district court's grant of summary judgment. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996). We construe all of the evidence presented and the reasonable inferences that can be drawn from that evidence in a light most favorable to Baert, the party opposing summary judgment. *Id.* Baert alleges that Euclid failed to reasonably accommodate his disability, and instead terminated him in violation of the ADA. To overcome Euclid's bid for summary judgment, Baert must show that there is a genuine issue of material fact with respect to whether he is disabled, whether he is a qualified individual, and whether Euclid failed to reasonably accommodate him. *Bultemeyer*, 100 F.3d at 1283. Because he agrees that he was no longer qualified to perform the essential duties of the Driver position, Baert must raise a genuine issue of material fact regarding whether Euclid was obliged to offer him another position, and whether he was responsible for the breakdown of the interactive process with Euclid to determine a reasonable accommodation.

## A.

The district court declined to decide whether Baert had come forward with enough evidence to overcome summary judgment on the issue of whether he is disabled, instead finding that he was not a "qualified individual" under the ADA. Because we find that Baert has raised genuine issues of material fact regarding whether he was a qualified individual, we must also resolve whether he is disabled for the purposes of the ADA. The ADA defines the term "disability" as (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Baert's claimed disability is in-

sulin-dependent diabetes, which was diagnosed in January 1993 when he became ill and was hospitalized. He was also diagnosed with pancreatitis at that time. He purports to qualify as an individual with a disability under parts (a) and (c) of the statutory definition cited above. Euclid contends that Baert provided insufficient evidence of a disability because the record does not show that Baert's impairment substantially limits a major life activity. Euclid focuses on the effect of Baert's diabetes on his ability to work. Euclid believes it is determinative that Baert has stated that he is perfectly healthy and that his diabetes does not affect his day-to-day activities.

■ Euclid misapprehends the nature of the disability analysis. We determine whether a condition constitutes an impairment, and the extent to which the impairment limits an individual's major life activities, without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices. *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1454 (7th Cir.1995). *See also Arnold v. United Parcel Service*, 136 F.3d 854, 861 and 863–64 (1st Cir.1998) (evaluation of an impairment and whether that impairment substantially affects major life activities should be made without regard to mitigating measures such as medicines or assistive or prosthetic devices); *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 937 (3rd Cir.1997) (same); *Doane v. City of Omaha*, 115 F.3d 624, 627–28 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998) (same); *Harris v. H & W Contracting Co.*, 102 F.3d 516, 520–21 (11th Cir.1996); *Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Daugherty v. City of El Paso*, 56 F.3d 695, 697 n. 1 (5th Cir.1995), *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996) (noting EEOC regulations that indicate that a person with insulin-dependent diabetes is substantially limited in major life activities

---

4. Helpers, also known as Driver Helpers, assisted the Route Driver Salesmen. Together, each Driver and Helper team drove to retail customers, unloaded beer from the truck, and delivered it into the customer's place of business. We will discuss the duties of Helpers more completely below.

because such a person would lapse into a coma without medication). *But see Arnold,* 136 F.3d at 865 (collecting cases holding or otherwise indicating that ameliorative measures should be taken into account in determining disability). We evaluate Baert's condition without regard, therefore, to the fact that he is apparently able to control the effects of the disease with insulin. That he feels "perfectly healthy" when he is taking insulin is utterly irrelevant to the assessment of disability for the purposes of the ADA.

■ At oral argument, Euclid asserted that even if we assess Baert's disability without regard to the effect of medication on his condition, Baert has failed to put any evidence into the record about the consequences of his condition if he fails to take medication. We must assess, then, whether Baert has come forward with enough evidence to show that an insulin-dependent diabetic is substantially limited in a major life activity when not treated with insulin. "Major life activities" include functions such as caring for oneself, performing manual tasks, breathing, walking, seeing, hearing, speaking, learning and working. *Roth,* 57 F.3d at 1454; 29 C.F.R. § 1630.2(i). Using the above as criteria, it would seem as if an insulin-*dependent* diabetic, who would likely lapse into a coma and die without insulin, would be "substantially limited" in *all* life activities, indeed would be deprived of life itself. Yet that is where Euclid rests its case, and so we must consider whether Baert has come forward with enough evidence of disability to overcome summary judgment. Baert is, of course, entitled to have all reasonable inferences drawn in his favor, and if a rational jury could infer that an insulin-dependent diabetic would be substantially limited in a major life activity without the benefit of insulin, then Baert survives summary judgment. *See Beck,* 75 F.3d at 1134. But we need not limit the analysis to the diagnosis alone because Baert has come forward with more than his mere diagnosis. The record reveals that his illness resulted in a 5–day hospitalization, after which his doctor instructed him to take insulin every day. At the time of his deposition, Baert had taken insulin every day since his release from the hospital. Euclid does not dispute these facts, and in fact, most of them

can be found in Euclid's Rule 12(m) statement of material, undisputed facts. Nor does Euclid dispute that Baert's condition is permanent, absent some major advancement in medical science.

We believe these facts are enough to support an inference that Baert is disabled. The parties have focused on whether Baert's diabetes affects his ability to work, one of the major life activities defined in ADA regulations, but they could just as easily have focused on any other life activity. Baert has shown that when he does not take insulin, he becomes seriously ill and requires hospitalization. A rational jury could infer from the evidence presented that without insulin, Baert would be hospitalized and would be unable to work. Baert could have produced additional evidence regarding what would happen to him if he stopped taking insulin, but he was not required to do so. The diagnosis itself, indicating that Baert is *dependent* on insulin, implies that Baert would become ill without medication. Baert's hospitalization corroborates his dependence on insulin and speaks to the severity of the consequences of failing to take it. *See also Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996) (noting that it was undisputed that plaintiff's insulin-dependent diabetes was considered a disability under the ADA). *Daugherty,* 56 F.3d at 697 n. 1 (declining to answer whether insulin-dependent diabetes constitutes a disability either as a matter of law or under the particular facts of the case, but noting that EEOC regulations indicate that a person with insulin-dependent diabetes is substantially limited in major life activities because such a person would lapse into a coma without medication); *Bentivegna v. United States Department of Labor,* 694 F.2d 619, 621 (9th Cir. 1982) (assuming without discussion that a person with insulin-dependent diabetes is an individual with a disability).

This conclusion is supported by the EEOC regulations regarding disability determinations. In explaining how to determine whether an impairment substantially limits a major life activity, the appendix to the Code of Federal Regulations sets out a few examples:

An individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices. Similarly, a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication. 29 C.F.R. pt. 1630.2(j) Appendix, at p. 339 (7-1-96 Edition). Similarly, the EEOC Compliance Manual posits that "[i]n very rare instances, impairments are so severe that there is no doubt that they substantially limit major life activities. In those cases, it is undisputed that the complainant is an individual with a disability." EEOC Compliance Manual at 902–21 (3/95 Edition). As an example of such an illness, the EEOC Compliance Manual cites *Bentivegna*, a case where the court accepted without discussion that a person with insulin-dependent diabetes was an individual with a disability. 694 F.2d at 621. We suspect most defendants would stipulate that insulin-dependent diabetes is an impairment that substantially limits major life activities rather than allow the jury to hear testimony regarding diabetic coma, but Euclid is free to fight this issue out at trial. Baert, however, has produced sufficient evidence to overcome summary judgment on this point, and is free to bolster this evidence at trial with testimony regarding the consequences of failing to take insulin.

■ Before we depart our discussion on disability, we must note what we are not holding. We are not holding that insulin-dependent diabetes, or any other disease for that matter, is a disability as a matter of law. The question of whether an impairment constitutes a disability and whether it substantially impairs a major life activity is an individualized inquiry, which must be determined on a case-by-case basis. *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998); *Byrne v. Board of Education, School of West Allis–West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992). Baert urges us to adopt a per se rule that insulin-dependent diabetes is a disability under the ADA, based on the language of the EEOC regulations we cited above. We decline to do so, even for a disease that as a practical matter may always be found to be disabling, because other EEOC regulations emphasize that every person's situation is to be considered individually. 29 C.F.R. pt. 1630, Appendix § 1630.2(j). *See also Arnold*, 136 F.3d at 865 (declining to adopt a *per se* rule for insulin-dependent diabetics, reasoning that the EEOC's reading of the statute does not become a per se rule just because certain impairments, when individually analyzed, nearly always lead to the same result).

## B.

■ To demonstrate that he is a "qualified individual," Baert must show that he is "able to perform the essential functions of his ... current job, *or some other available job*, with or without accommodation." *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir.1996) (Cudahy and Rovner concurring) (emphasis in original). The parties do not dispute that federal and state regulations prevent Baert from holding a commercial driver's license. *See* 49 C.F.R. § 391.41; 625 ILCS 5/18b–105(b). Indeed, Baert does not claim that he is qualified for his former position of Driver. Instead, he claims he was qualified for two other positions, that of Driver Helper (which we will refer to as the Helper position to distinguish it from the Route Driver Salesman position) or Warehouseman. Certain issues relating to Baert's qualification for those two positions overlap, but there are some unique issues relating to the Helper position, and we will address those first.

Euclid claims to have a policy requiring Helpers to hold the same commercial driver's license that Drivers must hold. The job of Helper, asserts Euclid, entails assisting the Driver in all aspects of the job, including driving the truck. Euclid also argues that Baert has no evidence showing that there were any openings in the Helper position, and it is thus irrelevant whether Baert could physically perform the essential functions of the job.[5] Euclid does not question whether

---

**5.** We will address Euclid's argument regarding the non-availability of a Helper position in the context of the reasonable accommodation analysis below.

Baert has the necessary skills for the Helper job, and in fact he apparently held the Helper position at one point in his career with Euclid.

Baert responds that there is conflicting evidence on the issue of whether a commercial driver's license is necessary for the job of Helper. For example, Euclid admits that it sometimes uses temporary workers or Warehousemen to fill in for the Helper position, and that in those cases, Euclid does not require the Helper to hold a commercial driver's license. Baert also testified that in some cases, contrary to Euclid's portrayal of a 50–50 shared driving scenario, the Driver always drives. We conclude that there is a genuine issue of material fact regarding whether Baert was a qualified individual for the Helper position. Although Euclid argues now that it requires all regular Helpers to hold commercial driver's licenses, the conflicting evidence entitles Baert to a trial on this issue. Euclid may not obtain summary judgment by declaring it has a policy when Baert may have evidence that Euclid follows the policy selectively.

Euclid also argues that Baert has not shown that he was physically able to perform the duties of either Helper or Warehouseman. Baert replies that a company-hired doctor examined him in January 1993 and reported that he was healthy and would be able to return to work soon. In fact, Euclid admits in its Local Rule 12(m) statement that the company doctor declared Baert was healthy in January 1993, except that he could not be released for work as a truck driver because of federal regulations. See Defendant's Statement of Material Undisputed Facts Submitted Pursuant to Local Rule 12(m), at ¶ 21. Euclid admitted that Baert told the company about the diagnosis, and thus Euclid was aware that Baert was healthy as early as January 1993. *Id.*, at ¶ 22. Finally, Euclid ultimately offered Baert a Warehouseman position, which provides additional evidence of Baert's ability to perform the essential tasks of that job. Euclid does not dispute that Baert was otherwise qualified for these positions in the sense that he had the necessary skills, and thus Euclid is not entitled to summary judgment

on the issue of whether Baert is a qualified individual.

## C.

The final question is whether Euclid is entitled to summary judgment on the issue of reasonable accommodation. Euclid professes that Baert did not request an accommodation, and that to the extent he did, he requested only a Helper job. According to Euclid, Baert has no evidence that there were any Helper openings, and an employer is not required under the ADA to create a position for a disabled employee. Moreover, Euclid blames Baert for any breakdown in the interactive process of determining a reasonable accommodation because Baert filed suit after Euclid offered the Warehouse position. Baert counters that beginning in March 1993, and perhaps earlier, he called Euclid's office manager a number of times asking if there were any openings in the Helper position or if there were any other jobs available. Baert points out that his departure from the Driver position created an opening that would be filled, under the union contract, by the most senior Helper bidding for the job. In turn, the promotion of a Helper would create a Helper opening. Euclid concedes that someone filled Baert's position but argues that Baert falls short of showing there was a Helper opening. The company admits that in May 1993, it hired a Warehouseman without offering the position to Baert but claims it did so because it did not realize Baert was able to fill the position. Baert contends that he would have taken that position, and that at that time, he would have been able to retain his seniority rights.

■ We must first decide whether there is a genuine issue of material fact regarding the availability of an alternate position to accommodate Baert. Second, if there was such a position, we must determine whether there is a genuine issue of material fact regarding which party caused the breakdown in the interactive process. Because we need not consider the second question unless we answer the first in the affirmative, we begin with the first question. The ADA may require an employer to transfer an employee to another available job as a reasonable accom-

modation when the employee can no longer perform the essential functions of his or her current position. *Cochrum*, 102 F.3d at 913 (Cudahy and Rovner concurring); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 497–98 (7th Cir.1996) (reasonable accommodation may require reassignment to a position wholly distinct and different from the one the disabled employee previously held); 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii) (reassignment to a vacant position is another possible accommodation under the ADA). *See also Daugherty*, 56 F.3d at 699–700 (ADA may require reassignment as a possible accommodation).[6]

■■■ This duty to reassign a disabled employee has limits. The employer need only transfer the employee to a position for which the employee is otherwise qualified. *Cochrum*, 102 F.3d at 913; *Gile*, 95 F.3d at 499. An employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation. *Gile*, 95 F.3d at 499. Moreover, the employer is only obligated to assign an employee to vacant positions, and is not required to "bump" other employees to create such a vacancy. *Id.* Nor is the employer required to create a new position for the disabled employee. *Id.* Finally, the reassignment must not impose an undue hardship on the employer. *Id.*; 42 U.S.C. § 12112(b)(5)(A).

Baert has raised a genuine issue as to whether there was a Helper opening available because Euclid admitted someone filled Baert's Driver position. Drawing all reasonable inferences in Baert's favor, the union contract provided that the most senior Helper who bid for the job would have received it, and that would have created a Helper opening. Had Baert been able to retain his se-

niority, he would have had priority over the Warehousemen who would be bidding for the open Helper position. This gives rise to an inference that there was an open Helper position available for Baert.

The analysis is even more in Baert's favor as to the Warehouseman's position, for Euclid concedes that it had an opening in the Warehouse which it filled in May 1993. Euclid's only explanation for its failure to offer the job to Baert is that Baert did not request it, and that Euclid did not know Baert was physically ready to return to work. Baert testified at his deposition that he repeatedly requested to be assigned to a Helper position *or any other open position* whenever he spoke to Euclid's office manager. That Euclid's office manager recalls the conversations differently creates a classic genuine issue of material fact. The finder of fact must determine whether Baert or Euclid's office manager is telling the truth. We cannot decide a credibility issue on summary judgment. Baert has also raised a genuine issue of material fact regarding his physical capability of performing either the Warehouseman or Helper job. Baert has shown that Euclid knew in January 1993 that the doctor it hired to examine Baert believed that he was healthy and would be ready to return to work shortly. This was well before the May 1993 opening in the Warehouse.

■■■ The only remaining issue is whether Baert was responsible for the breakdown in the interactive process. The ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation. *Beck*, 75 F.3d at 1135. "An employee's request for reasonable accommodation requires a good deal of communication between the employee and employer.... [B]oth parties bear responsibili-

6. The district court relied on the *Daugherty* case, but we find it distinguishable. *See Baert*, 954 F.Supp. at 173. In *Daugherty*, a part-time city bus driver lost his job after being diagnosed with insulin-dependent diabetes, under the same federal regulations affecting Baert. The bus driver requested reassignment to another city job as an accommodation, but the city had a hiring policy giving priority to full-time workers. Because of this policy, there were no other openings for the driver. The Fifth Circuit held that although the ADA may require reassignment as an accommo-

dation, an employer need not reassign the employee in contravention of hiring priority policies that favored full-time workers. 56 F.3d at 699–700. The *Daugherty* court held that the city was not required to fundamentally alter its program or create a new job for the driver. Baert, of course, is not asking Euclid to reassign him in contravention of its policies, but rather is claiming that Euclid does not really have the claimed policy or selectively enforces its stated policy of requiring Helpers to hold commercial driver's licenses. *Daugherty* is thus inapplicable.

ty for determining what accommodation is necessary." *Bultemeyer*, 100 F.3d at 1285. We held in *Beck* that neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. 75 F.3d at 1135. Euclid charges that Baert caused the breakdown when it offered him the Warehouseman position in January 1994, and Baert responded by filing suit. But by Baert's account, he began the interactive process a full year before that, asking to be placed in a Helper position or in any other open job. Euclid responded by refusing to place him in a Helper position even though it had apparently allowed temporary workers to occupy that position without a commercial driver's license, and by failing to tell him about the Warehouse opening in May 1993, a position that would have allowed Baert to retain his seniority rights. Construing all inferences in Baert's favor, a genuine issue remains regarding whether Euclid or Baert was responsible for the breakdown in the interactive process. Euclid is therefore not entitled to summary judgment on this point.

### III.

There remain a number of issues for trial. The trier of fact must determine whether Baert is disabled, and must assess his condition without regard to ameliorating medication. The trier of fact must also decide whether Baert is a qualified individual, not for the Driver job he held, but for the jobs of Helper and Warehouseman. Whether there was an open Helper position, whether Euclid really required Helpers to hold commercial driver's licenses, whether Baert requested the accommodation of any open position, and whether Euclid caused the breakdown of the interactive process are all questions that remain for trial. We therefore remand for a trial on these issues.

REVERSED AND REMANDED.