**Peggy GRANZOW, Plaintiff,**

v.

**EAGLE FOOD CENTERS,
INC., Defendant.**

**No. 97 C 3124.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 11, 1998.

Christian G. Spesia, Spesia, Ayers & Ardaugh, Joliet, IL, for Plaintiff.

J. Stephen Poor & David E. Metz, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

*MEMORANDUM OPINION*
*AND ORDER*

SHADUR, Senior District Judge.

Peggy Granzow ("Granzow") has sued Eagle Food Centers, Inc. ("Eagle"), asserting that Eagle violated the Americans with Disabilities Act ("ADA," 42 U.S.C. §§ 12101–12117)[1] by refusing to promote her because of her disability (epilepsy) and by retaliating against her for filing charges of discrimination. Eagle and Granzow have now brought Fed.R.Civ.P. ("Rule") 56 cross-motions for summary judgment on Eagle's disability discrimination claim. Both sides have complied with this District Court's General Rule ("GR") 12(M) and 12(N), and the motion is fully briefed and ready for decision. For the reasons set out in this memorandum opinion and order, both parties' motions are denied, but this Court makes the partial Rule 56(d) determination in Granzow's favor described hereafter.

*Summary Judgment Standards*

Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective—one that this Court has often described as Janus-like—that sometimes involves the denial of both motions. Such is the case here, for each party has shown that genuine issues of material fact remain that must be addressed before Granzow's claims may be resolved.

*Facts*

Since the age of 4 Granzow has suffered from epilepsy, a condition that causes her to experience two types of seizures: (1) complex partial seizures, where her arm jerks or she falls or she loses control of her bladder, and (2) grand mal seizures, where her whole body shakes uncontrollably (G. 12M ¶¶ 5–6).[2] She has taken medication for her epilepsy since she was 4, with the exception of a 9–month period when she was 19 years old. During that 9–month period Granzow's seizures became so severe that she lapsed into a coma for 3 or 4 days (*id.* ¶¶ 34–35). Dr. Donna Bergen, who has treated Granzow for epilepsy since 1991, diagnoses her as suffering from medically intractable epilepsy that results in multiple seizures despite medical intervention (*id.* ¶¶ 36, 38).

Granzow began working for Eagle as a utility clerk in its Morris, Illinois store in 1979, then transferred to the New Lenox store in 1982 where she was promoted to cashier (*id.* ¶ 7). At that time she told store manager Al Claussen that she suffered from epilepsy and that during a seizure her arm would jerk, her leg might go out on her and she would need to go upstairs and go to the bathroom (*id.*). Later she told Martin Snider ("Snider," the new manager after February 1988) the same thing (*id.*). Then in May 1993 Granzow suffered a cluster of seizures caused by the research trial of a new anticonvulsant and, upon the advice of Dr. Bergen, took a leave of absence from work until October 1, 1993 (*id.* ¶¶ 43–49).

On March 3, 1994 Granzow asked to be trained for and promoted to the service desk/office position at the New Lenox store (*id.* ¶ 51). Snider denied that request and, according to Granzow, told her that he would not promote her because of her epilepsy

---

1. Further ADA citations will take the form "ADA § —," referring to the Title 42 numbering rather than to ADA's internal numbering. Pertinent regulations from 29 C.F.R. are cited "Reg. § —."

2. This opinion cites to Granzow's GR 12(M) statements as "G. 12(M) ¶ —." Similarly, Eagle's GR 12(M) statements are cited as "E. 12(M)

¶ —." Unless otherwise noted, the cited statements have been either explicitly or implicitly admitted in the corresponding GR 12(N) response. Those same "G." and "E." abbreviations will be employed for the parties' other filings.

(*id.*).[3] Snider's deposition testimony directly contradicts Granzow's account of their meeting: He claims that he never made such a statement (Snider Dep. 113).

Based on that meeting, Granzow filed a charge of discrimination with the Illinois Department of Human Rights in April 1994 (G.12(M) ¶ 29). Eagle answered the charge with a verified response signed by its counsel, including Snider's admission (also verified) that Granzow had a disability (*id.* ¶ 30). In late April Eagle's Vice President of Labor Relations Randy Smith ("Smith") instructed Snider to train Granzow for the desk/office position in connection with a settlement agreement that also included a $300 payment to Granzow (*id.* ¶ 19). Then in October 1996 Granzow filed a second charge of discrimination claiming that Eagle had failed to train her for the service desk/office position as required by the settlement agreement and that another employee had been promoted to that position in her place (G. Oct. 23, 1996 EEOC charge).

Kevin Glancy ("Glancy") replaced Snider as the New Lenox store manager in November 1996. Part of Glancy's job was to evaluate cashiers, and he described Granzow's job performance from November 1996 to July 1997 as "excellent" (*id.* ¶ 21). In July 1997 Glancy determined that Granzow was qualified to be trained for the service desk/office position (*id.* ¶ 22). Granzow trained for that position for 4 months (3 months longer than employees are normally trained), but she was removed on November 1, 1997 and reinstated as a cashier (E.12(M) ¶¶ 5, 25). Granzow had made frequent mistakes during her training period—mistakes that she attributes to the pressures and stress of the position—and had been given several warnings that she would be demoted if she did not begin performing at a consistent level. Granzow does not dispute that she made repeated mistakes and that she was ultimately removed from the position because of them (*id.* ¶ 25-37), though she does quarrel with the reasons for and significance of those errors.

*Overview*

Before a court reaches the heart of any ADA discrimination claim (whether there was in fact a discriminatory act), it must answer two threshold questions in the affirmative (ADA § 12112(a); *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624 (7th Cir.1998)):

(1) Does the employee have a "disability"?

(2) Is the employee a "qualified individual"?

Both Eagle and Granzow argue their entitlement to summary judgment on each of those issues. This opinion will therefore first examine whether Granzow is or is not disabled as a matter of law and will then turn to the question whether she was qualified for the service desk/office promotion that she sought from Eagle.

*Disability*

ADA § 12102(2) defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

In *Gray v. Ameritech Corp.*, 937 F.Supp. 762, 767 (N.D.Ill.1996) this Court quoted Reg. § 1630.2(i) as defining major life activities in terms of "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Though each party claims entitlement to summary judgment on the disability issue, the earlier-mentioned dual perspective could of course produce victory for neither—but in this instance Granzow is a winner on this facet of the case.

As stated earlier, Eagle's EEOC filing—a verified response to Granzow's discrimination charge—said that "[c]omplainant is a person with a disability." That statement does not rise to the level of a conclusive judicial admission, as Granzow would have it,[4] but it is

---

3. Granzow also testified to earlier actions and statements by Snider that graphically demonstrated an epilepsy-based bias against Granzow (*id.* ¶¶ 8–9).

4. Granzow has provided no precedent for holding that a statement in administrative proceeding filings amounts to a judicial admission, and this Court was also unable to locate any such authority. *Murrey v. United States*, 73 F.3d 1448, 1455

plainly admissible as evidence and thus creates, at the very least, a genuine issue of material fact about Granzow's status—and that alone suffices to defeat Eagle's motion for summary judgment.[5] Because Eagle does not dispute that the statement amounts to a party admission, there is no need to spend more time analyzing why that is so.[6] Nonetheless Eagle now seeks to contradict its own earlier admission regarding disability by pointing primarily to Granzow's deposition testimony as to how her epilepsy affects her major life activities (E.Br.9–12). Because that testimony was central both to Eagle's motion for summary judgment and to its opposition to Granzow's cross-motion, this opinion turns to that cross-motion.

■ Granzow argues that as a matter of law she falls within each of categories (A) and (B) of the ADA § 12102(2) definition for disability (either being sufficient to prove disability): (A) she has a physical or mental impairment that substantially limits one or more of her major life activities and (B) she has a record of such an impairment with Eagle. On the record tendered to this Court, she prevails on both grounds.

Granzow correctly points to the teaching in *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 629–30 (7th Cir.1998) that the extent to which an impairment limits an individual's major life activities must be determined without regard to the availability of mitigating measures such as medicine or assistive devices. In *Baert* the plaintiff suffered from diabetes and, without his insulin, might lapse into a coma and die. That he felt "perfectly healthy" while taking his insulin was deemed "utterly irrelevant" (*id.* at 630). Granzow appropriately analogizes her own dependence on her epilepsy medication (referring to the coma that resulted from an earlier episode when she was unmedicated) to Baert's situation.

In response Eagle attempts to stress Granzow's deposition testimony, where she answered a battery of questions by saying that her epilepsy does not affect her ability to care for herself, perform manual tasks, walk, see, hear, speak, breathe, learn or work (E.12(M) ¶ 41). But that effort to undercut Granzow's position rests on the unacceptable premise that each of the successive questions by Eagle's counsel should have been understood by Granzow as including an unstated condition:

> If your epilepsy were not being treated by your medication and with the assistance of your surgically implanted vagal stimulator, would the epilepsy affect your ability to . . .?

That is a truly bizarre position—it is grounded in the type of wholly unreasonable inference that is barred by a host of cases exem-

---

(7th Cir.1996), the case cited by Granzow, discusses only answers to complaints or to requests for admissions—both traditionally considered judicial admissions—rather than a verified administrative response. Michael Graham, *Federal Practice and Procedure: Evidence* § 6726, at 534 (interim ed.1992) similarly lists the types of statements that qualify as judicial admissions, and the type of administrative filing at issue here is found nowhere in that list:

> Included within this category are admissions in the pleadings in the case, admissions in open court, stipulations of fact, and admissions pursuant to requests to admit.

Indeed, even apart from that difficulty, *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir.1996) teaches that "a statement made in one lawsuit cannot be a judicial admission in another." Eagle's statement regarding Granzow's disability was made in response to a 1994 charge of discrimination—a charge that resulted in a settlement between the parties (G. 12M ¶¶ 19–20). But this lawsuit flows from a second (January 1996) charge of discrimination against Eagle

based on its failure to fulfill that settlement agreement (E. Answer to G. First Amended Complaint ¶ 31). Even if administrative filings were to be considered pleadings, then, the verified response at issue here is from another proceeding and is therefore, under *Kohler,* not considered a judicial admission in the current case.

5. Granzow also argues in response (G.R. Br.21–23) to Eagle's motion for summary judgment that genuine issues of material fact exist as to whether Eagle (through Snider) perceived her as being disabled—category (C) of the ADA § 12102(2) disability definition. This opinion need not address that issue for two reasons: the ruling just announced in the text and the ensuing ruling in favor of Granzow under categories (A) and (B).

6. *Tompulis v. Schwartz & Freeman,* No. 92 C 7375, 1994 WL 419607, at *6 (N.D.Ill. Aug. 9, 1994) has reached the identical conclusion as to a like verified response constituting "a classic example of a party admission" and hence as "admissible for all purposes."

plified by *St. Louis N. Joint Venture*, 116 F.3d at 265 n. 2.

Entirely understandably, Granzow has provided an affidavit confirming the obvious: that like any reasonable person hearing those questions, she answered all of them in the real world terms of her current physical condition, particularly when she had already stated on the record that she was taking medication and had received the vagal stimulator (G.12(M) ¶ 32). And of course that does not fall within the category of affidavits mentioned in *Gray*, 937 F.Supp. at 769 that seek to create "sham issues of fact" by contradicting prior deposition testimony, for no contradiction is involved.

As *Baert* instructs, it is irrelevant that Granzow's major life activities are not affected while she is medicated and while her condition is under that degree of control. What is relevant instead is whether Granzow's major life activities would be substantially affected *without* her medication and vagal stimulator. Clearly Granzow has demonstrated that they would be. During the only period in her life when she was unmedicated she slipped into a coma lasting 3 to 4 days, substantially affecting numerous life activities (*id.* ¶ 34–35). Furthermore, she offers the uncontroverted testimony of Dr. Donna Bergen, a board-certified neurologist, (1) that while Granzow is experiencing a seizure or is without the assistance of medication or assistive devices, she is substantially limited in her ability to work, walk, talk, see, hear, speak and care for herself and (2) that without her medication and vagal stimulator, Granzow could die as a result of her epilepsy (*id.* ¶ 36–41).

Eagle has sought to oppose that strong evidence of a disability with nothing but an impermissible inference from testimony that, fairly read, does not negate disability at all. That means that Granzow has established as a matter of law that she has a physical or mental impairment that substantially limits one or more of her major life activities—in short, a disability.

Though that really renders it unnecessary to resolve the issue in terms of the second

ADA definition, a few words on that subject too may be in order. There Granzow argues that she is also disabled as a matter of law because she has a record of being substantially limited in the major life function of working (G.Br.19). As this Court said in *Gray*, 937 F.Supp. at 770, Granzow "must show not just that she has a history of impairment, but that she has a history of an impairment that substantially limits one or more major life activities." Just as she has demonstrated that she was substantially limited in the major life activity of working, so too is she able to meet her burden that she has a record of such substantial limitation. She told Eagle that she had epilepsy, she disclosed what would happen during a seizure, she did experience several seizures while at work, and at one point she took 4 months off of work because of her epilepsy. Eagle does not dispute any of those facts, but it denies that they amount to a record of impairment. Eagle is wrong on that point too.

Thus having satisfied both category (A) and category (B) of the ADA disability definition (either of which is sufficient), Granzow is entitled to a ruling as a matter of law on the disability issue. This opinion should be considered as a Rule 56(d) determination on that score.

*Qualified Individual*

"Qualified individual with a disability" means "an individual with a disability who, with or without, reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" (ADA § 12111(8)). Granzow brought her ADA claim based upon Eagle's refusal to promote her to the service desk/office position in its New Lenox store. In that regard, she would bear the burden of proof at trial on the issue of whether she was a "qualified individual" for the position (*Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir.1998)).[7] *Nowak*, 142 F.3d at 1002–03 (adapted to this case in gender terms) laid

---

7. To withstand summary judgment, of course, Granzow bears the lesser burden of demonstrating that genuine issues of material fact exist as to whether she is a qualified individual.

out the two-prong test that must be satisfied to meet that burden:

First, the disabled individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position [she] holds or desires." 29 C.F.R. § 1630.2(m). Second, [she] "can perform the essential functions of such position" with or without accommodation. *Id.*

■ Eagle argues that Granzow was unqualified for the service desk/office position because she lacked the necessary cash-handling skills. As evidence of her claimed lack of qualifications, Eagle cites eight Employee Warnings and three Employee Evaluations issued to Granzow detailing her poor cash-handling skills (E.12(M) ¶¶ 12–24). For her part, Granzow does not dispute that good cash-handling skills were necessary for the position, but she responds that her last write-up for problems in that area was in 1989, fully five years before she sought the promotion in 1994 (G.12(M) ¶ 26).

Eagle further argues that Granzow's poor performance when she was finally trained for the position in 1997 demonstrates that she was unable to perform the essential functions of the position during the relevant 1994 time frame. But by 1997 a job that had been performed by two employees when it was originally sought by Granzow (one employee handling the desk functions, the other handling the office functions) was being filled by only one employee (G.12(M) ¶ 11). That change undoubtedly made the position more difficult, so that Granzow's 1997 failure (though perhaps somewhat probative on the issue of her qualification for the earlier position) is by no means conclusive.

In conjunction with those built-in limitations on Eagle's contention, Granzow also argues that its use of her cash-handling problems is merely a pretext for discrimination. According to both Granzow and union representative George Holtschlag (who was present during the conversation), when Granzow asked Snider for the promotion he said he would not promote her because of her seizures or epilepsy (G.12(M) ¶ 51). Although Snider disputes that he said anything about Granzow's epilepsy, he admits that he never

mentioned her cash-handling problems when denying her the promotion, nor did he tell Eagle's Vice President of Labor Relations Smith that cash-handling problems were even one (let alone *the*) basis for his refusal to promote Granzow (G.12(M) ¶ 23). From the required look at the evidence in the light most favorable to Granzow, a genuine issue of material fact clearly exists as to whether Granzow was qualified.

On the other side of the coin, though, Granzow's earlier record of cash-handling problems could reasonably be considered by a factfinder as probative of an absence of the requisite skills for the job, and her poor performance in the service desk/office position similarly tends to call into question her ability to perform the essential functions of the job. That being the case, the opposite perspective of viewing the evidence in the light most favorable to Eagle likewise creates a genuine issue of material fact as to Granzow's qualification for the job. It will be recalled that Granzow bears the burden of establishing that factor and she has surely failed to demonstrate her qualifications so conclusively that she is entitled to summary judgment.

*Motivating Factor*

Granzow also argues that she is entitled to prevail through summary judgment because Eagle judicially admitted, via its response to a Rule 36 request for admission, that Snider told Smith that Granzow's epilepsy was a factor in his refusal to promote her. Although Granzow is correct that Eagle cannot now back away from that judicial admission, she is wrong in contending that such an admission conclusively establishes Eagle's liability.

To begin with, Granzow has not demonstrated that she falls within the ADA's protection because she must still establish at trial that she is a "qualified individual." Second, according to *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996) (a pregnancy discrimination case adapted to the current situation):

Once a plaintiff shows that an employment decision was motivated in part by her [dis-

ability], the defendant may avoid a finding of liability by proving that it would have made the same decision had the plaintiff not been [disabled].

Eagle asserts that its decision was based on Granzow's lack of qualifications, and it will presumably argue at trial that it would have denied Granzow the promotion even absent her disability—an issue left unresolved on the current motions. Hence Granzow's motion is denied on that issue.

### Conclusion

This case provides a classic vindication of this Court's practice of urging upon counsel that in many instances they would be better off investing their time (and their clients' money) in preparation for trial than in pursuing the onerous tasks of advancing and opposing Rule 56 motions under the GR 12(M) and 12(N) requirements.[8] Indeed, this lawsuit presents an a fortiori illustration of that proposition: This case would have been compelled to go to trial in all events even if either litigant's Rule 56 motion had been entirely successful, for the motions did not address Granzow's separate retaliation claim at all.

In any event, each side has raised genuine issues of material fact in opposition to the other's motion for summary judgment on Granzow's ADA claim, so that neither side is entitled to a judgment on that claim as a matter of law (although Granzow now has the benefit of a favorable Rule 56(d) termination on the issue of her disability). Everyone has wasted a great deal of effort, and we are almost entirely back to square one. This action must go to trial on both of Granzow's claims, the procedures for which trial will be discussed at the next status hearing to be held at 9 a.m. December 23, 1998.

---

8. Just as one added component of that comparison, over and above the avoidance of those burdens, this Court never requires trial briefs in employment discrimination cases. Thus all of the work involved in the generation of the parties' Rule 56 legal memoranda is also avoided by taking the trial path instead. And with the other limitations that this Court also regularly grants in the preparation of the GR 5.00–required final pretrial order, again lessening counsel's workload, that trial path compares even more favorably to the Rule 56 alternative.