Paula S. SKORUP, Plaintiff–Appellant,

v.

MODERN DOOR CORPORATION,
Defendant–Appellee.

No. 97–3796.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1998.

Decided Aug. 26, 1998.

Douglas D. Small (argued), Foley & Small, South Bend, IN, for Plaintiff–Appellant.

William T. Webb (argued), Hardig, Lee & Groves, South Bend, IN, for Defendant–Appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Paula Skorup brought this action against Modern Door Corporation alleging that it violated her rights under the Americans with Disabilities Act of 1990 ("ADA" or "the Act"), and discriminated against her on the basis of her religion. Modern Door moved for summary judgment on both counts; the district court granted the motion and Skorup appeals. Skorup has not established that she is disabled under the ADA, and she has not presented evidence supporting her claim of religious discrimination; thus we affirm the district court's grant of Modern Door's motion for summary judgment.

## I. HISTORY

Modern Door employed Skorup as a permanent employee in the racking department from May 1993 until February 1995. Racking consists of placing a screw in a drilled hole in a board holding 500 or 1,000 screws. The screws are placed in the board so the heads of the screws can be painted. While Skorup worked in the racking department, Modern Door purchased two machines to automate part of the racking process. As a result of this mechanization, Modern Door anticipated that it would have to downsize the workforce in the racking department.

Jerry Morris, the general manager of the company and a Baptist, instructed David Stokes, a Roman Catholic, to lay off two people in the racking department. He gave Stokes four criteria to use when selecting the employees for termination: productivity, attendance, seniority, and attitude. Because Stokes believed all the racking employees had started at approximately the same time and because he had not observed any attitude problems in the department, Stokes reduced the criteria to productivity and attendance. Stokes selected Skorup and Donna Wines for termination. Skorup had never been disciplined for either attendance or productivity problems. Stokes communicated his decision to Ed Barnes, the racking department supervisor. When Stokes terminated Skorup, he told her she was being fired because Modern Door was phasing out the racking department. Although Stokes claimed that the racking department would

be completely gone within a short time, after Skorup's dismissal Modern Door hired two new permanent employees in the racking department.

Skorup alleges that Modern Door's reason for terminating her is pretextual. She claims that Modern Door dismissed her because of her disability. While Skorup worked at Modern Door, Dr. Birnbaum, her treating physician, diagnosed her as suffering from bicipital tendinitis and fibromyalgia, which would be aggravated if she lifted over ten pounds or overused her shoulder girdle. Neither medical problem affected Skorup's personal life at home and Skorup testified that her job in the racking department was within her physical capabilities. Dr. Birnbaum assessed her condition as follows: abilities to care for self, walk, see, hear, speak, breathe, and learn were not severely restricted as compared to the general population, and while her ability to work was restricted, it was not severely restricted as compared to the general population. Dr. Birnbaum testified that Skorup is severely impaired only as to jobs that require a repetitive pulling motion of the shoulder.

Approximately two weeks before Modern Door terminated her employment, the company sent Skorup to the closures department. In this area, employees use their arms to lift pieces of foam, stretch, and pull out a stamped section. Skorup told Stokes that her medical condition interfered with her job performance in the closures department. During her time in closures, Skorup had a scheduled appointment with Dr. Birnbaum. Upon returning from the appointment, Skorup gave a doctor's slip to Shirley Lute, a company official. It limited Skorup's lifting to ten pounds and restricted overuse of her shoulder girdle. Lute sent Skorup back to racking.

After Skorup returned to racking, Stokes told her she could stay there "a few days" and that "we'll see what's going to happen." Shortly thereafter, Barnes, the department supervisor, told the racking employees that they had "better get rid of [their] doctor's excuses." The day after Modern Door fired Skorup, Barnes told the remaining racking

employees that they had to "get rid of" their health problems and indicated that Skorup was terminated because she had problems with her shoulders and could not work in the closures department.

Since her termination by Modern Door, Skorup has worked as a floral designer at Ray and Kenny's Supermarket and at Orr's Flowers.

## II. ANALYSIS

### A. *Summary Judgment Standard*

We review a district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. *ADA Claim*

To invoke protection under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, Skorup must show that she suffers from a disability as defined in the Act. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir.1996). The Act defines "disability" in three ways:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Equal Employment Opportunity Commission regulations interpreting the Act define "[m]ajor [l]ife [a]ctivities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means that the person is either "[u]nable to perform a major life activity" or is "significantly restricted as to the condition, manner or duration" under which the individual can perform the major life activity as compared to the average person in the general population. *Id.* at § 1630.2(j)(1).

■ If Skorup's condition does not rise to the level of a disability, then she cannot recover under the Act even if Modern Door terminated her on its account. "The Act is not a general protection of medically afflicted persons.... [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1304, 140 L.Ed.2d 469 (1998).

■ Here Skorup contends that she is protected under the Act because she meets the definition of "disabled" under either section (A) or (C) of § 12102(2). She first alleges that she is substantially limited in the major life activity of working. In this context, "substantially limits" means "significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes." *Weiler*, 101 F.3d at 525 (citing 29 C.F.R. § 1630.2(j)(3)(i)). As this Court has made explicit, however, " 'an inability to perform a particular job for a particular employer' is not sufficient to establish a substantial limitation on the ability to work; rather, 'the impairment must substantially limit employment generally.' " *Id.* at 524 (quoting *Byrne*

*v. Board of Educ., Sch. of West Allis–West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992)). Thus, for Skorup to defeat Modern Door's motion for summary judgment, she must provide some evidence establishing a genuine issue of material fact over whether her condition resulted in her being substantially limited from employment generally.

■ Skorup has produced scant evidence to show that her impairment substantially limits her ability to work. While Skorup asserts in her brief that she cannot perform "[a]ny and all jobs which require [repetitive stretching and pulling of the shoulder]," she provides no evidence of the number of jobs from which she is precluded because of this impairment. To establish that the ADA applies to her condition, Skorup needed to identify what requirements posed by the class of assembly line jobs (or, alternatively, by a broad range of other jobs) were problematic in light of the limitations her fibromyalgia imposed upon her. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir. 1998). "This is not an onerous requirement, but it does require at least some evidence from which one might infer that [Skorup] faced 'significant restrictions' in her ability to meet the requirements of other jobs." *Id.*

The only evidence the record provides is that Skorup can work the racking job without accommodation, while she is precluded from working in the closures department because that job requires the kind of stretching and pulling of the shoulder that her impairment forbids. It is nearly axiomatic in this Circuit that "it is not enough for the plaintiff to show that her impairment 'prevented [her] from performing one narrow job for one employer.'" *Id.* at 506 (quoting *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir.1997)). While we do not require that plaintiffs establish the precise percentage of jobs their impairment precludes them from performing, in this case Skorup has not set forth any evidence from which we can determine even general guideposts, such as whether her impairment forecloses her from accepting a few, many, or most of the jobs in a particular class or in a broad range of classes. Without some evidence suggesting that Skorup is precluded from performing a class of jobs or a

broad range of jobs in various classes, her impairment does not meet the definition of a disability under 42 U.S.C. § 12102(2)(A).

■ Skorup's second approach is to argue that she is disabled under 42 U.S.C. § 12102(2)(C); i.e., that Modern Door perceived her as having a disability that substantially limited a major life activity. The question for us, then, is whether Modern Door perceived Skorup's impairment to be sufficiently severe to substantially limit a major life activity. It is not enough for Skorup to show that Modern Door was aware of her impairment; instead Skorup must show that Modern Door knew of the impairment and believed that she was substantially limited because of it. The "substantially limits" inquiry in this context is comparable to our inquiry above:

> [Section] 12102(2)(A) looks for proof beyond the plaintiff's inability to satisfy the expectations of a single employer; to be "substantial," a limitation on the ability to work must be one that affects the plaintiff's ability to perform a class or range of jobs before it qualifies as a disabling limitation under the ADA. For purposes of § 12102(2)(C), the employer's perception of the plaintiff's inability to work must have a comparable breadth.

*Davidson*, 133 F.3d at 511 (citing 29 C.F.R. § 1630.2(*l*) and collecting cases). In this case, Skorup must show that Modern Door believed that she was unable to work a particular class or broad range of jobs.

Skorup has not produced any evidence suggesting that Modern Door held this belief. Skorup relies on the fact that Stokes was "flustered" by her medical slip and impairment and the fact that Barnes admitted that he was "angry" about it. This evidence does not support an inference that Modern Door regarded her as having an impairment that substantially limited one or more of her major life activities. Based on her doctor's work restriction, Modern Door may have regarded Skorup as having an impairment that kept her from continuously stretching and pulling her shoulder, and Modern Door employees may have been "flustered" and "angry" about this restriction. However,

Skorup has not shown that Modern Door considered her restriction on stretching and pulling her shoulder a severe restriction on her ability to perform assembly line jobs generally, or to substantially limit any of her other major life activities. Thus, Skorup has not established that she is disabled under § 12102(2)(C).

Because Skorup did not create a genuine issue of material fact as to whether she has a disability under the ADA, the district court properly granted Modern Door's motion for summary judgment.

### C. *Religious Discrimination Claim*

Title VII provides that "it shall be an unlawful employment practice for an employer ... to discharge any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). Religion includes "all aspects of religious observance and practice, as well as belief." *Id.* at § 2000e(j). To defeat Modern Door's motion for summary judgment, Skorup was required to show a genuine issue of material fact over whether "her perceived religious shortcomings ... played a motivating role in her discharge." *Venters v. City of Delphi,* 123 F.3d 956, 972 (7th Cir.1997). Skorup's argument on this count deserves little discussion.

 Skorup, a Roman Catholic, alleges that she would not have been terminated if she were Baptist, the faith shared by Morris, the general manager, and several of Modern Door's employees. She alleges that Baptist management employees showed a strong preference to Baptist employees, from hiring to preferential job assignments. However, Skorup does not connect this preference for Baptists to her termination. Although Skorup believes that if she were Baptist she would not have been laid off, this belief alone is insufficient to defeat a summary judgment motion. *See Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir.1997) (" '[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.' "), *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998) (quoting

*Mills v. First Federal Savings & Loan Assoc.,* 83 F.3d 833, 841–42 (7th Cir.1996)). Additionally, Skorup does not address one of the most powerful pieces of evidence against her position: Stokes, the person responsible for selecting her for termination, is also Roman Catholic. Skorup has not presented evidence to create a genuine issue of material fact regarding her religious termination claim; the district court properly granted Modern Door's motion for summary judgment on this claim.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.