Mark ARNOLD, Plaintiff,

v.

CITY OF APPLETON, WISCONSIN, Defendant.

No. 97–C–0869.

United States District Court, E.D. Wisconsin.

April 14, 2000.

**938**

Jeffrey P. Sweetland, Daniel L. Shneidman, Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks, Domer, Milwaukee, WI, Aaron N. Halstead, Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks, Domer, Madison, WI, for plaintiff.

Kevin P. Reak, Gunta & Reak, Milwaukee, WI, for defendant.

## MEMORANDUM AND ORDER

GORENCE, United States Magistrate Judge.

The plaintiff filed this action alleging that the defendant City of Appleton, Wisconsin (Appleton), violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, when it declined to hire him as a firefighter due to his epilepsy. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03 (E.D.Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 13.05(a) (E.D.Wis.).

The parties filed motions for summary judgment. These motions were briefed before the Court rendered its decisions in *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and *Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), which address certain relevant issues under the ADA. The parties were given an opportunity to file supplemental briefs. The motions for summary judgment are now fully briefed and will be addressed herein.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *McNeal v. Macht*, 763 F.Supp. 1458, 1460–61 (E.D.Wis.1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of showing the needlessness of a trial—(1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law—is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at

trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson,* 477 U.S. at 267, 106 S.Ct. 2505; *see also, Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves ...."). On a motion for summary judgment, all inferences are taken in the light most favorable to the nonmoving party. *Matter of Wade,* 969 F.2d 241, 245 (7th Cir.1992).

## RELEVANT FACTS[1]

The plaintiff, Mark Arnold, is a 35–year-old male resident of the City of Appleton. In early 1995, the plaintiff applied for a firefighter position advertised by defendant City of Appleton (City). On June 19, 1995, following the plaintiff's completion of a written examination and interviews with the City's Police and Fire Commission (PFC) and Fire Chief Richard Davis, the defendant made the plaintiff a conditional offer of employment as a firefighter. The offer of employment was conditioned on the plaintiff's successful completion of medical and psychological examinations and a physical agility test. The plaintiff successfully completed the defendant's psychological evaluation.

The plaintiff has epilepsy. Epilepsy is a neurological condition that may cause unprovoked seizures. It is not the result of an independent illness, but rather is the result of an intrinsic dysfunction of the brain. The plaintiff takes Dilantin, a medication used by persons with epilepsy, which suppresses rapidly firing neuronal discharges, thereby suppressing seizures. The plaintiff stopped taking Dilantin sometime in 1988 and he did not have another seizure until January 16, 1990. After the January, 16, 1990, seizure, he was placed on a Dilantin dosage of 400 mg. per day, which has continued to the present day.

"Many years ago," the plaintiff experienced side effects from taking Dilantin. (Deposition of Mark Arnold [Arnold Dep.] at 31–32). He felt edgy and uncomfortable as a result of taking Dilantin. *Id.* at 31. Dilantin is one of the most commonly used seizure medicines and one of the most difficult of the seizure medications to regulate. (Deposition of George Morris III, M.D. [Morris Dep.] at 18).

On April 28, 1991, the plaintiff experienced another seizure as the result of a drop in the levels of Dilantin in his bloodstream. According to the examining physician's note relating to the April 1991 seizure, the seizure was related to sleep deprivation. The plaintiff's Dilantin level at the time of the April 1991 seizure was 4.1, with therapeutic levels being between 10 and 20. The plaintiff has not suffered another seizure since the April 1991 seizure, which occurred four years and two months before the defendant's conditional offer of employment to the plaintiff. In the past, the plaintiff has lost consciousness in connection with one or more seizures.

Richard Menet, M.D., performed the plaintiff's medical evaluation on behalf of the defendant in June 1995. Dr. Menet is not a specialist in epilepsy. He is a specialist in internal medicine and is an occupational health physician who has taken care of numerous patients with seizure disorders. At the time Dr. Menet examined the plaintiff in June 1995, the plaintiff had been seizure-free for over four years. Dr. Menet was aware of no medical evidence that the plaintiff was more likely to experience a seizure than someone who had been seizure-free for five years. In his examination of the plaintiff, Dr. Menet did not inquire whether the plaintiff had any other periods of sleep deprivation during the four years since his last seizure. Dr. Menet noted that the plaintiff's Dilantin levels were diminished at the time of

---

1. Unless accompanied by citation, the relevant facts are taken from the proposed findings of fact to the extent they are not disputed. However, citations to sources of quoted excerpts have been included, even when those excerpts are undisputed.

the 1991 seizure and acknowledged that could have been a contributing factor.

Following his medical evaluation of the plaintiff, Dr. Menet recommended that the defendant not hire the plaintiff, stating that the plaintiff was "not fit for placement [as an] active duty firefighter." (Deposition of Richard Menet, M.D. [Menet Dep.] Exh. 2). This recommendation was made without Dr. Menet ever having seen the position description for firefighter, the position for which the plaintiff had applied. However, Dr. Menet felt he had adequate knowledge of the stressors facing firefighters.

In recommending that the defendant reject the plaintiff's firefighter application, Dr. Menet relied upon a 1988 "recommendation" from a United States Department of Transportation "consensus conference." The recommendation from the DOT conference was that persons with epilepsy be disqualified from engaging in over-the-road trucking unless they had been seizure-free without the assistance of medication for 10 years.

Dr. Menet based his opinion that the plaintiff was not fit for duty as a firefighter upon his examination of the plaintiff, his review of the plaintiff's medical records, whatever knowledge he had of the stressors a firefighter might encounter, and his discussion with the plaintiff's personal physician, Dr. Buffo. When Dr. Menet told Dr. Buffo that he thought firefighting would be a poor choice for the plaintiff, Dr. Buffo did not disagree. Dr. Menet based his opinion on his belief that the plaintiff posed a risk of a sudden, spontaneous and unexpected loss of consciousness due to his epilepsy.

George Morris III, M.D., is a neurologist with the Medical College of Wisconsin. Dr. Morris is an epilepsy specialist, 95% to 100% of whose patients have epilepsy. He generally places no restrictions on his epileptic patients who have been seizure-free for "sizable periods of time." (Morris Dep. at 41). In Dr. Morris' expert opinion, there are no health or safety reasons that preclude the plaintiff from serving as a firefighter for the City of Appleton. Dr. Morris also stated that jobs where sleep deprivation and dehydration are likely to occur may be poor choices for the plaintiff. He also stated that his knowledge of firefighting is limited to the job description he read and what he has seen on television. Dr. Morris did not conclude that fatigue was a reason for the plaintiff's seizures. Id. at 12. Before rendering his expert, neurological opinion, Dr. Morris reviewed the essential and other job functions and work requirements of the defendant's firefighters.

In Dr. Morris' expert opinion, the "[s]ustained periods of seizure freedom . . . such as we're discussing in Mr. Arnold's situation . . . are extraordinarily more likely to continue than they are not to [continue]. . . ." It is rare for an individual who has been seizure-free for five years to have a seizure, meaning that such a seizure happens in less than one percent of epilepsy patients. Id. at 26–27. Dr. Morris expressed these opinions, but admits that they are based upon "scientific studies on a very low level." Id. at 27. He further testified that "the studies are not very inclusive studies, but they're as good as we have." Id. at 27–28.

Factors which can lower the seizure threshold and increase the likelihood of a seizure include sleep deprivation, stress, dehydration, hyperventilation, flashing lights, and missed meals. Dr. Morris testified that: "[T]here are patients for whom these can be factors. That any one of these factors will affect any given patient is not . . . necessarily the case." Id. at 11–12. The plaintiff's medical records do not indicate that fatigue was a factor in the plaintiff's seizures. Id. at 2.

Firefighters are likely to encounter flashing lights. They also miss meals and work without sleep. Fire Chief Davis was aware of no medical evidence that made five years of seizure-freedom a "magic

number" in terms of fitness to serve in a firefighter position.

If a firefighter suffered a seizure and lost consciousness while driving a truck or fighting a fire, it is highly probable that the firefighter, another firefighter or someone else would die. A firefighter who suffered a seizure while driving an emergency vehicle would probably collide with someone or something. If a firefighter had a seizure while climbing a ladder, or venting a roof, he or she would probably fall. If a firefighter lost consciousness while inside a burning building, it is highly probable that he or she would die. Firefighters are required to work in teams of two. If one partner suffered a seizure while inside a building, he would not only endanger himself, but his partner as well.

The plaintiff is permitted to and does drive a motor vehicle. He also climbs ladders and works on the roof of his two-story home. The plaintiff does not refrain from any activity out of fear that he might have a seizure.

According to Richard Bayer, the City's Assistant Director of Personnel, the fact that the plaintiff had not been seizure-free, off medication, "clearly ... was a factor" in the defendant's "decision not to hire him." (Deposition of Richard Bayer [Bayer Dep.] at 9–10.) Mr. Bayer testified that "[the plaintiff] was not considered further for a position of firefighter because he had been under medication for a seizure disorder" and because he continued to take that medication at the time he applied for the position with the City. *Id.* at 16. He further testified that "our doctors recommended that we not continue the offer of employment to him." *Id.* Based on Dr. Menet's recommendation, the defendant withdrew its conditional offer of employment to the plaintiff.

## ANALYSIS

In his initial brief, the plaintiff seeks summary judgment on his claim asserting that there is no genuine dispute of material facts regarding the fact that he is an individual with a disability within the meaning of the ADA, he is qualified to perform the duties of a firefighter without any need for accommodation, and that the City withdrew its offer of employment because of his disability. In this initial submission, the plaintiff specifically contended that he is entitled to summary judgment under the first and third subsections of the standard for disability under the ADA.[2] Thus, the plaintiff contended that he has a physical impairment that affects his nervous system and/or that the City regarded him as having a physical impairment that substantially limited his ability to work as a firefighter.

The defendant opposes the plaintiff's motion. It asserts that there is insufficient evidence to enable the jury to conclude that the plaintiff's epilepsy, even without medication, would substantially limit one or more major life activities or because the defendant regarded the plaintiff's epilepsy as substantially limiting a major life activity. At that time, the defendant also filed a separate "cross-motion" for summary judgment and stated in the motion that it "seeks leave to file this cross-motion for summary judgment in conjunction with responding to the plaintiff's motion for summary judgment." (Defendant's Cross–Motion for Summary Judgment at 1).

The defendant also asserts that there is insufficient evidence to support a determination that the City unlawfully discriminated against the plaintiff. Rather, the City contends that there is "substantial evidence" that it made a judgment in consultation with one of its occupational physicians, who also consulted with the plain-

---

**2.** Under the ADA, an individual has a "disability" if he: A) has a physical or mental impairment that substantially limits one or more of the major life activities; B) has a record of such an impairment; or C) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1059 (7th Cir.2000).

tiff's primary physician, that the plaintiff was not qualified for the job of firefighter due to the dangerous nature of the job. The defendant further asserts that this judgment is supported by standards promulgated by the National Fire Protection Association, Inc., and the Wisconsin Administrative Code. The defendant asserts that, since it did not discriminate against the plaintiff, summary judgment should be entered dismissing the action.

In its reply brief, the plaintiff objects to the defendant's "coupling" of its response to his motion with its own "Cross–Motion for Summary Judgment." *See* Plaintiff's Reply Brief in Support of Motion for Summary Motion at 12. The plaintiff asserts that the City's "Cross–Motion" is a dispositive motion governed by the court's scheduling order and was not timely filed. The plaintiff states that this motion is not properly before the court and that he has only addressed the defendant's response to his initial motion for summary judgment. The plaintiff asks the court to grant summary judgment in his favor.

In light of the Supreme Court's decisions in *Sutton,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *Murphy,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and *Albertsons,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), the court conducted a telephone conference with counsel regarding the pending summary judgment motion on July 28, 1999. As a result of the conference, it was agreed that the parties would file supplemental simultaneous briefs, not to exceed 10 pages in length "on the defendant's pending motion for summary judgment." (Court's Order of July 28, 1999, at 1).[3]

In his supplemental brief filed on August 11, 1999, the plaintiff addresses the impact of the Court's decisions in *Sutton, Murphy,* and *Albertsons,* contending that, at most, these decisions dispose of the plaintiff's contention that he has an actual disability. The plaintiff notes that in such decisions the Court determined that for the purposes of determining whether an individual has an actual disability under 42 U.S.C. § 12102(2)(A), measures which an individual is taking to correct or mitigate an impairment must be considered in determining whether the impairment substantially limits any of the individual's major life activities.

The plaintiff notes that the *Murphy* and *Sutton* plaintiffs also contended that they were disabled under 42 U.S.C. § 12102(2)(C), the "regarded as" subsection, based on erroneous perceptions that their impairments substantially limited them in their major life activity of working. The plaintiff asserts that in its analysis of those "regarded as" claims the Court did not rely on the corrective measures which defeated the actual disability claims.

Although agreeing that in light of *Sutton, Murphy* and *Albertsons,* he does not suffer from an actual disability under 42 U.S.C. 12102(2)(A), he nonetheless asserts that he has stated a claim under subsection (B) based on a record of impairment and a claim of "perceived disability, based not just on working, but on all major life activities under subsection (C)." (Plaintiff's Supplemental Brief Pursuant to Court's July 28, 1999 Order at 4). Thus, he contends that he is entitled to summary judgment finding that he is disabled under subsection B of 42 U.S.C. § 12102(2) based on his record of impairment, and subsection C of 42 U.S.C. § 12102(2) based on a perceived disability.

In its supplemental brief also filed on August 11, 1999, the defendant asserts that there is no evidence that the plaintiff has a disability under the ADA and no evidence that supports a finding that the plaintiff was regarded as having an impairment that substantially limits one or more major life activities. Subsequently, on Au-

---

**3.** The court's order erroneously referred to the "defendant's" pending motion for summary judgment.

gust 16, 1999, the defendant filed a motion asking the court to disregard the portion of the plaintiff's supplemental brief which pertains to his having a "record of disability" because it raised a new argument not discussed in the plaintiff's initial set of briefs. The court denied the motion but gave the defendant additional time to October 20, 1999, to file its submission on the "record of impairment" issue.

■ At the outset, the court notes that the defendant filed its cross-motion for summary judgment one month after the deadline for the filing of dispositive motions. The plaintiff objected to this filing in its reply brief. Although the defendant filed a cross-motion for summary judgement, he did not file any reply brief in support of that motion. The brief and responses to the plaintiff's proposed findings of fact and additional proposed findings of facts filed by the defendant were also filed as a part of its response to the plaintiff's motion for summary judgment. Moreover, summary judgment may be entered in favor of a non-movant even though the opponent has made no formal cross-motion under Rule 56. *See* 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure,* Civil 3d § 2720 at 346–53 (West 1998); *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *Coach Leatherware Co., Inc., v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2nd Cir.1991); *Spitz v. United States,* 432 F.Supp. 148 (E.D.Wis.1977). Thus, this court will consider the defendant's cross-motion for summary judgment.

The purpose of the ADA is to eliminate discriminatory practices against individuals with disabilities. *See* 42 U.S.C. § 12101(b). The ADA is a "broad sweeping protective statute requiring the elimination of discrimination against individuals with disabilities." *See Talanda v. KFC*

*Nat. Management Co.,* 140 F.3d 1090, 1095 (7th Cir.), *cert. denied,* 525 U.S. 869, 119 S.Ct. 164, 142 L.Ed.2d 134 (1998); 42 U.S.C. § 12101(b)(1). Congress enacted the ADA to "level the playing field" for disabled people. *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995). However, the ADA does not erect an impenetrable barrier around the disabled employee preventing the employer from taking any employment actions vis-a-vis the employee. *Id.*

Title I of the ADA prohibits covered entities from discriminating against "a qualified individual with a disability because of the disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" 42 U.S.C. § 12112(a). A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

An individual has a "disability" if he: A) has a physical or mental impairment that substantially limits one or more of the major life activities; B) has a record of such an impairment; or C) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1059 (7th Cir.2000). To fall within this definition one must have an actual disability (subsection [A] ), have a record of a disability (subsection [B] ), or be regarded as having one (subsection [C] ). *Sutton,* 119 S.Ct. at 2144. In *Sutton,* the Court emphasized that "whether a person has a disability under the ADA is an individualized inquiry." 119 S.Ct. at 2146.[4]

---

4. In *Sutton,* the Court pointed out that no agency has been given authority to issue regulations implementing the generally applicable provisions of the ADA— §§ 12101–12102. *Sutton v. United Airlines, Inc.,* 527 U.S. 471,

119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). "Most notably no agency has been delegated authority to interpret the term 'disability.'" *Id.* (citing § 12102[2] ). Nonetheless, the Equal Employment Opportunity

Not all impairments are disabilities for purposes of the ADA. *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir.2000). As the statute indicates, "an impairment rises to the level of a disability for the purposes of the ADA if it 'substantially limits' one or more of the major life activities of an individual." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 505 (7th Cir.1998). The court of appeals for this circuit has held that: "Major life activities" include "basic functions of life" "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working—those rudimentary activities 'that the average person in the general population can perform with little or no difficulty.'" *Id.* (citations omitted); *see also, Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995) (citing 29 C.F.R. §§ 1613.702[c], 1630[i]); *Hamm v. Runyon*, 51 F.3d 721 (7th Cir.1995). Thus, not every impairment which limits a major life activity will be considered disabling; only if the resulting limitation is "significant" will it meet the ADA's test. *Davidson*, 133 F.3d at 505–06.

To be "substantially limited" means that "the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Krocka*, 203 F.3d at 513; *Davidson*, 133 F.3d at 506; 29 C.F.R. § 1630.2(j)(1)(i), (ii). To make this determination, a court must consider the individual's ability to perform major life activities "notwithstanding the use of a corrective device." *Krocka*, 203 F.3d at 513 (quoting *Sutton*, 119 S.Ct. at 2149). An inability to perform one particular job, a portion of one particular job for a single employer, or increased discomfort while performing a major life activity does not constitute a substantial limitation on the ability to perform such activities. *See*

Commission (EEOC), issued regulations to provide additional guidance regarding the proper interpretation of the term "disability."

*Harrington v. Rice Lake Weighing Systems, Inc.*, 122 F.3d 456, 460 (7th Cir. 1997); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir.1996).

The court of appeals for this circuit has held that to demonstrate a significant limitation on his ability to work, it is not enough for the plaintiff to show that his impairment "simply prevented him from performing one narrow job for one employer." *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir.1997); *see also*, 29 C.F.R. § 1630.2(j)(3)(i). Rather, the plaintiff must show that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Id.; see also, Weiler*, 101 F.3d at 525.

In *Schneiker*, 200 F.3d at 1060 n. 2, the court noted that the Supreme Court expressed "some concern" over whether 'working' should be considered a 'major life activity.' *Id.* (citing *Sutton*, 119 S.Ct at 2151.) More recently, in *Staceen M. Sinkler v. Midwest Property Management Limited Partnership*, 209 F.3d 678, 684 n. 1 (7th Cir.2000), the court stated until "the Supreme Court definitively excludes working as a major life activity, we will follow the precedent of this circuit and will regard 'working' as a major life activity."

■ To state a cause of action under the ADA, a plaintiff must establish three elements: 1) that he is a disabled person within the meaning of the ADA, 2) that he is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job, and 3) that the employer discriminated against him because of his disability. *Howard v. Navistar Intern. Transp. Corp.*, 904 F.Supp. 922, 927 (E.D.Wis.1995), *affirmed*, 107 F.3d 13 (7th Cir.1997) (Table); *see also, White v.*

119 S.Ct. at 2145. The Court did not address what deference, if any, such regulations are due. *Id.*

*York Intern. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

To be a member of the protected class, the plaintiff must establish that he has a "disability" as defined by the ADA. *Schneiker,* 200 F.3d at 1059; *Davidson,* 133 F.3d at 505. The ADA only protects "an individual with a disability who, with or without an accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996) (quoting 42 U.S.C. § 12111[9]).

The plaintiff agrees that he does not have an actual disability under the ADA based on the recent holdings of the Court in *Sutton, Murphy,* and *Albertsons.* The leading case, *Sutton,* held that the use of a corrective device is to be considered in making the determination of whether an individual has an actual disability, and that one has a disability under subsection A of 42 U.S.C. § 12102(2), if notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity. *Sutton,* 119 S.Ct. at 2149. In the instant case, the plaintiff states that, because his epilepsy has been controlled by Dilantin since 1981, he does not have an actual disability which limits a major life activity.

In the current posture of this case, the plaintiff asserts that he is disabled under subsection B and subsection C of the definition of "disability" under the ADA. He asserts that he is a disabled because he has a record of a disability (subsection [B]) and because the defendant regarded him as having a disability (subsection [C]).

The Supreme Court did not analyze a claim of a record of disability under subsection B in last summer's triad of ADA cases. In *Davidson,* the court of appeals for this circuit addressed a claim based on a record of disability. 133 F.3d at 509–10. As explained in *Davidson,* the coverage of the ADA is extended by § 12102(2)(B) to persons who have a history of, or have been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. *Id.* at 509 (quoting 29 C.F.R. § 1630.2[k]). The court stated that this provision would include people who have recovered from previously disabling conditions, such as cancer or coronary disease, but who may remain vulnerable to the "fears and stereotypes of their employers." The court noted that in this regard subsection B is a close "sibling" to the perceived impairment provision of subsection C. *Id.*

In this case, the plaintiff asserts that he has a record of disability. In so contending, he recites his medical history regarding past seizures and treatment. The plaintiff states that it is "clear from Dr. Menet's letter of April 19, 1996, to the Equal Rights Division and his deposition testimony that, irrespective of an actual present disability, he based his negative recommendation on [the plaintiff's] 'history of seizures dating back to 1981' and on his belief that [the plaintiff] continued to pose a 'potential for sudden unexpected loss of consciousness.'" (Plaintiff's Supplemental Brief Pursuant to Court's July 28, 1999 Order at 5).

The plaintiff states that there is no question that at all material times he has had a record of a disabling physical impairment, epilepsy. He further asserts that it was a disability as long as it substantially limited one or more of his major life activities when it was active and not under control. In so contending, he asserts that the court's reasoning in *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 628 n. 3 (7th Cir.1998), is instructive.

In *Baert,* which was decided before *Sutton, Murphy* and *Albertsons,* the plaintiff, a truck driver who lost his job when he was diagnosed with insulin-dependant diabetes, sued his former employer under the ADA. *Id.* at 628. He claimed that he was disabled under subsections A and C of the statutory definition of disability. *Id.* at 629. The court discussed the nature of the disability analysis and stated that: "[w]e

determine whether a condition constitutes an impairment, and the extent to which the impairment limits an individual's major life activities, without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices." 149 F.3d at 629 (citations omitted).

The court addressed whether plaintiff Baert had come forward with enough evidence to show that an insulin-dependent diabetic is substantially limited in a major life activity when not treated with insulin noting that "major life activities" include functions such as caring for oneself, performing manual tasks, breathing, walking, seeing, hearing, speaking, learning and working. *Id.* at 630. The court did not limit its analysis to the diagnosis alone because the record revealed that the plaintiff's illness resulted in a five-day hospitalization after which his doctor instructed him to take insulin every day and that, at the time of his deposition, the plaintiff had been consistently following this directive. *Id.* The defendant also did not dispute that the plaintiff's condition was permanent, absent some major advancement in medical science. *Id.*

The court held that such facts were enough to support an inference that the plaintiff was disabled and that the plaintiff had shown that when he did not take insulin, he became seriously ill and required hospitalization. *Id.* The court emphasized that it was "not holding that insulin-dependent diabetes, or any other disease for that matter, is a disability as a matter of law," stating that the question of whether an impairment constitutes a disability and whether it substantially impairs a major life activity is an individualized inquiry which must be determined on a case-by-case basis. *Id.* at 631.

The plaintiff attempts to draw an analogy between his epilepsy and the diabetes at issue in *Baert.* He argues that, like unmedicated diabetes which could lead to a coma, any of the seizures that he had could have left him " 'substantially limited' in all life activities, indeed ... deprived of life

itself." (Plaintiff's Supplemental Brief Pursuant to Court's July 28, 1999 Order at 8 [quoting *Baert,* 149 F.3d at 630] ).

There are several problems with the plaintiff's reliance on *Baert.* The case did not involve a claim of record of disability under subsection B. It involved a claim of actual disability under subsection A. Additionally, the approach taken in *Baert,* to analyze a subsection A claim of disability without reference to mitigating factors was rejected in *Sutton,* 119 S.Ct. at 2144. Furthermore, as emphasized in *Sutton* as well as in *Baert,* the determination of whether an impairment constitutes a disability under the ADA is an individualized inquiry, so that a diagnosis of an impairment itself is not sufficient to constitute a disability.

The plaintiff also relies on *Olson v. General Elec. Astrospace,* 101 F.3d 947, 953 (3rd Cir.1996). In *Olson,* the plaintiff alleged that an employer violated the ADA by failing to hire him because he suffered from depression, a sleep disorder, and multiple personality disorder. The district court granted summary judgment for the defendant finding that the plaintiff failed to demonstrate that he had a disability which substantially limited one or more of his major life activities. *Id.* at 952–53. The appellate court upheld the determination the plaintiff did not show that he was either disabled or had a record of impairment within the meaning of the ADA. *Id.* at 953.

The appellate court noted that the evidence recited by the district court that reflected the plaintiff's "ability to function normally despite what appear to be serious psychological and emotional problems defeats that part of [the plaintiff's] ADA claim." *Id.* The court further explained that the evidence that was apparently offered to demonstrate the plaintiff's fitness as an employee "ironically establishes that he was not substantially limited in a major life activity." *Id.* The court therefore held that the plaintiff could not establish that

he was disabled or had a history of being disabled. *Id.*

The plaintiff also cites *Buckley v. Consolidated Edison Co. of New York, Inc.,* 127 F.3d 270, 272 (2nd Cir.1997), a case involving a recovering drug and alcohol addict who also suffered from a medical condition known as a neurogenic bladder. Subsequently, on *en banc* reconsideration, the Court of Appeals for the Second Circuit vacated the panel decision. *Buckley v. Consolidated Edison Co. of New York, Inc.,* 155 F.3d 150 (2nd Cir.1998). Therefore, *Buckley* is of no precedential value.

In this case, it is undisputed that the plaintiff has epilepsy and that he takes Dilantin, a medication used by persons with epilepsy to suppress seizures. After the plaintiff stopped taking Dilantin in 1988, he had another seizure on January 16, 1990, and was again placed on Dilantin. The record reflects that he currently remains on that dosage. Thus, the plaintiff has a physical impairment. *See Todd v. Academy Corp.,* 57 F.Supp.2d 448, 452 (S.D.Tex.1999).

However, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. *See Sinkler,* 209 F.3d at 685–86 (citing *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196 [1998]). It must then be determined if the impairment "substantially limited" this major life activity. *Sinkler,* at 685. The plaintiff makes the conclusory statement that there is no question that at all material times he has had record of a disabling physical impairment—epilepsy. He asserts that it was a disability as long as it substantially limited one or more of his major life activities when it was active and not under control.

The plaintiff does not clearly articulate what major life activity he believes his epilepsy substantially limited. In his sup-

plemental brief he asserts that he has stated a claim under subsection (B) based upon a record of impairment and a claim of "perceived disability, based not just on working, but on all major life activities under subsection (C)." (Plaintiff's Supplemental Brief Pursuant to Court's July 28, 1999, Order at 4). The plaintiff has the burden of presenting sufficient evidence from which the jury could find that he had a record of an impairment which substantially limits one or more of his major life activities. *Schneiker,* 200 F.3d at 1059.

■ The undisputed facts establish that the plaintiff is permitted to and does drive a motor vehicle. He also climbs ladders and works on the roof of his two-story home. The undisputed facts further establish that the plaintiff does not refrain from any activity out of fear that he might have a seizure. There is also no evidence that the plaintiff's condition resulted in his being substantially limited from employment generally. *Skorup v. Modern Door Corp.,* 153 F.3d 512, 515 (7th Cir.1998).

As the court stated in *Skorup,* " 'an inability to perform a particular job for a particular employer' is not sufficient to establish a substantial limitation on the ability to work; rather, 'the impairment must substantially limit employment generally.' " 153 F.3d at 514 (quoting *Weiler,* 101 F.3d at 524). The plaintiff has failed to present sufficient facts to establish that his impairment substantially limits his ability to engage in major life activities as required under the statutory definition of disability.[5]

The plaintiff also asserts that he is "disabled" under subsection C of 42 U.S.C. § 12102(2), because the defendant perceived him as having a disability that substantially limited a major life activity. In *Krocka,* 203 F.3d at 513–14, the court explained that the "regarded as" prong of

---

5. The court notes that in *Sinkler,* at 685, the court of appeals states that if the plaintiff's condition "fails to fall within the definition of impairment set forth in § 12102(2)(A), she

cannot assert that Midwest [the defendant] terminated her because she had a record of that condition." The appellate court did not further explain this statement.

the ADA's disability definition is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons. The court noted that it had previously stated:

> Many ... impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

*Id.* at 514 (quoting *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 541 [7th Cir.1995]). The court observed that the Supreme Court has noted that to establish a claim under the "regarded as" prong, "it is necessary that a covered entity entertain misperceptions about the individual." 203 F.3d at 514 (quoting *Sutton*, 119 S.Ct. at 2150.) These misperceptions may take the form of believing "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Id.*

In subsection C cases it is not enough for the plaintiff to show that the defendant was aware of his impairment. *See Skorup*, 153 F.3d at 515. Rather, the plaintiff must show that defendant "knew of the impairment and believed that [he] was substantially limited because of it." *Id.*

■ As stated in *Davidson*, 133 F.3d at 511, with regard to an inability to work:

> Section 12102(2)(A) looks for proof beyond the plaintiff's inability to satisfy the expectations of a single employer; to be "substantial," a limitation on the *ability to work must be one that affects the plaintiff's ability to perform a class or range of jobs before it qualifies as a disabling limitation under the ADA.* For purposes of § 12102(2)(C), the employer's perception of the plaintiff's ina-

bility to work must have a comparable breadth.

(citing 29 C.F.R. § 1630.2(1) and collecting cases) (emphasis added). A substantial limitation is not established by an impairment which results in the inability to perform a particular job for a particular employer. *Sinkler*, at 687 (citation omitted). Rather, the impairment must substantially limit employment generally. *Id.; Skorup*, 153 F.3d at 514. To prevail on his § 12102(2)(C) claim that he was discriminated against by the defendant because it believed he was disabled, the plaintiff must show that the defendant believed that he was unable to work in a particular class or broad range of jobs as required in the definition of disability under § 12102(2)(A). *Sinkler*, at 687; *see also, Skorup*, 153 F.3d at 515.

There is no dispute that the plaintiff has epilepsy. The plaintiff asserts without further explanation that the defendant perceived him as being substantially limited based not just on working, but on all major life activities under subsection C. However, the plaintiff has provided no evidence to demonstrate that the defendant believed that his impairment would limit his ability to work at a broad range of jobs or that he was "disabled" within the meaning of the ADA. Even if the court were to accept the plaintiff's contention that the defendant believed that he could not perform the job of firefighter because of his epilepsy, the perceived inability to perform one job is not sufficient to establish that the plaintiff is substantially limited in the major life activity of working. *Skorup*, 153 F.3d at 514.

■ In this case, there is no evidence that the defendant viewed the plaintiff's impairment as constituting "a significant barrier to [his] employment, taking [his] unique circumstances into account." *Id.* It is not enough for the plaintiff to demonstrate that he suffers from epilepsy. *Krocka*, 203 F.3d at 512–513. Rather, he must also demonstrate in the record that his epilepsy substantially limits his ability

to perform a major life activity as required under the ADA's statutory definition of disability. *See Id.* The plaintiff has failed to present evidence which establishes that he has a disability under 42 U.S.C. § 12102(2).

In sum, as the proponent of his ADA claim, the plaintiff has the burden of presenting such evidence. Because the plaintiff has not shown that he is "disabled" as contemplated by the ADA, the court will deny the plaintiff's motion for summary judgment in this case. The defendant's motion for summary judgment will be granted.

### ORDER

NOW, THEREFORE, IT IS OR-DERED that plaintiff's motion for summary judgment be and hereby is **denied.**

**IT IS ALSO ORDERED** that the defendant's motion for summary judgment be and hereby is **granted.**

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.