Lamar Keith **LANDRY**

v.

**UNITED SCAFFOLDING, INC.**

**No. CIV.A. 03–454BM3.**

United States District Court,
M.D. Louisiana.

Sept. 27, 2004.

Ralph Brewer, Baton Rouge, LA, for Plaintiff.

Stephen Whitlow, Kyle A. Ferachi, Keogh, Cox & Wilson, Ltd., Baton Rouge, LA, for Defendant.

## *RULING*

POLOZOLA, Chief Judge.

This matter is before the Court on the defendant's Motion for Summary Judgment.[1]  The plaintiff opposes defendant's motion.[2]  For the reasons which follow, defendant's motion for summary judgment is granted.

1. Rec. Doc. No. 10.

2. Rec. Doc. No. 19.

## I. Factual Background

The plaintiff Lamar Landry ("plaintiff") brought this lawsuit alleging claims under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and Louisiana Employment Discrimination Law. Plaintiff was hired by the defendant, United Scaffolding, Inc. ("defendant"), as a scaffolding safety technician in June of 2002. The plaintiff claims that he holds a certificate for the Construction Site Safety Technician Program, and was qualified for the position for which he was hired. There is some dispute as to the understanding of plaintiff's qualifications prior to his hire. Defendant contends that plaintiff represented that he was qualified and had experience for the position[3]. The plaintiff states that he informed the defendant that his previous work experience did not include working for a scaffolding company and that he would require some "on-the-job" training.[4]

There is also a dispute as to whether the defendant was pleased with plaintiff's job performance. The defendant states that it received complaints from his supervisors regarding plaintiff's qualifications and job performance. Defendant also contends that it provided plaintiff with an instructional videotape and referred him to OSHA rules regarding scaffolding in an attempt to increase plaintiff's knowledge of his position.

Plaintiff does not dispute he received this training, but argues that the defendant was satisfied with his job performance. Plaintiff also notes that the defendant never advised the plaintiff that it was dissatisfied with his work performance un-til the plaintiff requested permission to come to work late after having suffered symptoms of an epileptic seizure. The plaintiff contends he was discharged the day following this seizure episode. The plaintiff also alleges that he was treated differently than other employees because other employees were routinely allowed to come in late due to illness.

In support of its motion for summary judgment, the defendant contends that based solely on plaintiff's poor job performance, plaintiff's supervisors recommended he be terminated. In response to defendant's motion, plaintiff states that his job performance met or exceeded all of the expectations of the position of scaffolding safety technician. Plaintiff further contends he was terminated without receiving any prior warning that the defendant had concerns about his job performance. Plaintiff also notes that his supervisor failed to follow the "write-up" procedure that was normally implemented prior to terminating an employee.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an ele-

---

3. *See,* Defendant's Statement of Uncontested Facts.

4. *See,* Plaintiff's Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried.

5. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

ment essential to that party's case, and on which that party will bear the burden of proof at trial." [6] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [7] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [8]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[9] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[10] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [11] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." [12] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[13]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [14]

## B. Plaintiff's Claims under the Americans with Disabilities Act ("ADA")

The ADA was enacted to protect qualified individuals with disabilities from discrimination in the workplace. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." [15]

Under the ADA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment posi-

---

6. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

7. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (*quoting Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552).

8. *Little, supra* at 1075.

9. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996).

10. *Little, supra* at 1075; *Wallace, supra* at 1047.

11. *Wallace, supra* at 1048 (quoting *Little, supra* at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996).

12. *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing,* 70 F.3d 26 (5th Cir.1995).

13. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

14. *Id.* at 248, 106 S.Ct. at 2510.

15. 42 U.S.C. § 12111(8); *See Giles v. General Electric Co.,* 245 F.3d 474, 483 (5th Cir.2001); *Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254, 258 (5th Cir.2001).

tion that such individual holds or desires."[16]  A disability under the Act is defined as either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.[17]

■■■ A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.[18] To rise to the level of a disability, an impairment "must *substantially* limit one or more major life activities."[19]  The statutory language, requiring a substantial limitation of a major life activity, emphasizes that the impairment must be a significant one.[20]  Where the claim is that the plaintiff was "regarded as" having a substantially limiting impairment, the requirement that the perceived impairment be a substantially limiting disability remains, **and the plaintiff bears the burden of making a *prima facie* showing that the impairment as the defendant perceived it, was substantially limiting.**[21]

The term "substantially limits" has been defined in the EEOC regulations as being either " '[u]nable to perform a major life

activity that the average person ... can perform' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' "[22]  The EEOC definition of "major life activities" includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, working, lifting, reaching, sitting or standing."[23]

■■■ The United States Supreme Court recently set forth factors which lower federal courts should follow when determining if a plaintiff is a "qualified individual with a disability" in *Toyota Motor Mfg., Kentucky, Inc. v. Williams.*[24] This case follows the trend of the Supreme Court's trilogy of cases, *Sutton v. United Airlines,*[25] *Albertson's, Inc. v. Kirkingburg,*[26] and *Murphy v. United Parcel Service,*[27] in narrowing the scope of the ADA. In *Toyota,* the Supreme Court held that an employee claiming ADA violations **must show that he or she is impaired in a variety of life activities, and not just those activi-**

16.  42 U.S.C. § 12111(8).

17.  29 C.F.R. § 1630.2(g).

18.  *Id.,* at 479, *quoting Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).

19.  *Id.* (Emphasis in original).

20.  *Forrisi v. Bowen,* 794 F.2d 931, 933–34 (4th Cir.1986); *see also, Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

21.  *Deas v. River West, L.P.,* 152 F.3d 471, 480 (5th Cir.1998).  (Emphasis added).

22.  *Id.,* at 480, *quoting* 29 C.F.R. § 1630.2(j)(1)(i) & (ii).

23.  *Breech v. Becon Construction,* 2002 WL 31324045, at *4 (E.D.La. Oct. 16, 2002)(*citing Ortega v. Southwest Airlines,* 1999 WL

1072543, at *3 (E.D.La. Nov.24, 1999)(Clement, J.)(*citing Pryor v. Trane Co.,* 138 F.3d 1024, 1026 (5th Cir.1998); 29 C.F.R. § 1630.2(I), Appendix to Part 1630—Interpretive Guidance on Title I of the ADA; 29 C.F.R. § 1630.2(j)(i)—(iii))).

24.  534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

25.  527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

26.  527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

27.  527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

ties that are job-related. Essentially, an impairment which only affects an employee's job performance does not necessarily qualify as a disability under the ADA.[28]

The Supreme Court recognized in *Toyota* that the plaintiff was limited in performing her work because of her alleged disability. However, the Court found that her ability to perform personal activities meant that she was not substantially limited as required by the ADA.[29] Thus, the Supreme Court set the standard high in *Toyota* for being a qualified individual under the ADA when it stated, "[w]hen addressing the major life activity of performing manual tasks, **the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.**"[30]

#### a. *Prima Facie* case under the ADA

■ A plaintiff may prove a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the plaintiff may establish a prima facie case of discrimination by showing that he: (1) suffers from a disability; (2) is otherwise qualified for the job; (3) was subject to some adverse employment action; and (4) was replaced or treated less favorably than non-disabled employees.[31]

The issue now pending before this Court is whether the plaintiff is "disabled" as defined by the Act, and/or whether he was "regarded as" disabled by his employer. In order to establish the first prong of the *prima facie* case of disability discrimination, the plaintiff must establish that he is a "qualified person with a disability" or was "regarded as having such an impairment" under the Act.

#### 1. Plaintiff is not "disabled" under the ADA

The Fifth Circuit has held that "an individualized, case-by-case determination of disability best achieves the purposes of the ADA."[32] Furthermore, the EEOC has stated in its Interpretive Guidance that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.'"[33] Thus, the Court must determine if the plaintiff suffers from a "disability" based on the circumstances surrounding this particular plaintiff's epilepsy.

In *Breech v. Becon Construction*,[34] the Eastern District of Louisiana addressed a case similar to the one presently before the Court. The plaintiff in *Breech* filed a suit under the ADA alleging that his former employer failed to re-hire him because of his epilepsy. The defendant moved for summary judgment on the basis that the plaintiff failed to establish a *prima facie* case of disability discrimination.[35]

---

28. *Toyota*, 534 U.S. at 200, 122 S.Ct. at 693. (Emphasis added).

29. *Id.*

30. *Id.* (Emphasis added).

31. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir.1995); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, (5th Cir.1996), *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

32. *Deas*, 152 F.3d at 478.

33. *Id.,quoting* 29 C.F.R. § 1630.2(j), App. (1997).

34. 2002 WL 31324045 (E.D.La. Oct. 16, 2002).

35. *Id.,* at *1.

The *Breech* plaintiff testified that he had epilepsy for many years, and that he experienced seizures once or twice a month. He also testified that the seizures occurred only at night while sleeping, and that his seizures were light and under control. The plaintiff further claimed that he took his medication as prescribed and saw a neurologist every six months. Breech did not have any surgery for his epilepsy and never injured himself or anyone else as a result of a seizure. The plaintiff noted that he had been repeatedly denied Social Security disability benefits because his epilepsy was controlled by medication.[36]

The court found that Breech had been regularly employed for the prior 10 to 15 years as a security guard, a tennis instructor, and most recently as a construction worker. The plaintiff testified that he never had any problems performing his job duties because of his epilepsy and that he had revealed his epilepsy to every potential employer whenever he applied for a job. At the time of his lawsuit, Breech was working as a packing machine operator.[37]

Breech was initially hired by the defendant in 1999. Following completion of that project, he re-applied with the defendant and was hired to work on another project in Mississippi. Beacon claims that it terminated Breech from that job for insubordination and putting his fellow workers in danger. Although the plaintiff disputed defendant's argument, the court found that "the conflicting versions of that event are irrelevant to defendant's summary judg-ment argument that Breech cannot establish a prima facie case of disability discrimination in connection with Becon's failure to hire him a third time."[38]

Following this incident, Breech re-applied for a job with Becon but was ultimately not rehired. The facts surrounding Becon's decision not to rehire Breech were disputed. The plaintiff alleged that his employer's decision was based on his epilepsy, while the defendant argued that it had legitimate, non-discriminatory reasons for its decision.[39]

This dispute in the facts[40] did not prevent the court from granting the defendant's motion for summary judgment. The court addressed the requirements for establishing a *prima facie* case of disability discrimination by quoting from the Supreme Court's decision in *Sutton* stating that " 'if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act.' "[41]

The *Breech* court also noted that *Sutton* found that a disability

[E]xists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. *A person whose physical or mental impairment is corrected by medication or other*

36. *Id.*

37. *Id.*, at *2.

38. *Id.*

39. *Id.*

40. Attempting to establish that he was "disabled" under the law, the plaintiff argued that he was substantially limited in the major life activity of working. The defendant countered that the plaintiff's epilepsy was not a disability under the ADA because it was controlled by medication and did not substantially limit any of the plaintiff's major life activities, including working.

41. *Id.*, at *5, *quoting Sutton*, 527 U.S. at 478, 119 S.Ct. 2139.

*measures does not have an impairment that presently "substantially limits" a major life activity.* To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected, it does not "substantially limi[t]" a major life activity.[42]

The *Breech* court found that "[t]he Supreme Court cited epilepsy as an example of an impairment that may or may not be disabling with the use of medication."[43] The court concluded that the plaintiff had not made a *prima facie* showing that he was disabled under the ADA. The court set forth its conclusion for its decision stating:

> The evidence, consisting of his own testimony, reveals that his epilepsy is controlled by medication and that his infrequent nocturnal seizures do not substantially limit him in the major life activity of working. He has consistently worked over the past 10 years and is currently working, having always advised his employer that he has epilepsy. He is able to work without any restrictions except that he refrain from working at night.

> Breech's opposition memorandum does not cite any evidence that creates a triable factual dispute. His only evidence of his alleged limitations is that he lives with his mother because he needs to stay with someone at night in case he has a seizure that requires medical help, and that he cannot drive. However, he has presented *no* evidence that either of these restrictions or his intermittent nocturnal seizures substantially limit him in the major life activity of working.[44]

The court also relied on the decision rendered in *Equal Employment Opportunity Comm'n v. Sara Lee Corp.,*[45] wherein the Fourth Circuit stated:

> To hold that a person is disabled whenever that individual suffers from an occasional manifestation of an illness would expand the contours of the ADA beyond all bounds. An intermittent manifestation of a disease must be judged the same way as all other potential disabilities . . .[46]

■ The Court now turns to a discussion of the motion for summary judgment which is now pending before the Court. A review of the record reveals that plaintiff's own deposition testimony establishes that the plaintiff is not "disabled" under the ADA. The plaintiff testified that he is generally permitted to drive, and holds a valid Louisiana driver's license. Plaintiff noted that he was instructed not to drive if he has a seizure.[47] Plaintiff's testimony also indicates that he has performed several jobs prior to and since graduating from ABC School in Baton Rouge, Louisiana.[48] The plaintiff testified that he has held the following positions: fabricator for a roofing company, boilermaker, pipefitter, and a variety of other jobs he performed in plants.[49]

It is also significant that the plaintiff's own testimony establishes that his seizures were under control. In his deposition, the

---

**42.** *Id.,quoting Sutton,* 527 U.S. at 482–83, 119 S.Ct. 2139. (Emphasis in original).

**43.** *Id.,quoting Sutton,* 527 U.S. at 488, 119 S.Ct. 2139.

**44.** *Id.,* at *5–6. (Emphasis in original).

**45.** 237 F.3d 349 (4th Cir.2001).

**46.** *Breech,* at *6, *quoting Sara Lee Corp.,* 237 F.3d at 352.

**47.** *See* Deposition of Lamar Landry, pp. 6–7.

**48.** *See Id.,* at p. 8.

**49.** *See Id.,* at pp. 11–15.

plaintiff testified that he had not had a seizure in "over two and a half years, maybe three." [50] The plaintiff also testified that he takes Dilantin for his seizures, and has not had any "full-blown" seizures while taking this medication. [51] The plaintiff stated in his testimony that his seizures can be brought on by his lack of sleep or proper nutrition. However, the plaintiff testified that if he eats and rests properly and takes his medication, he can do whatever he wants to do. [52]

It is clear to the Court that the plaintiff is not "substantially limited" in any major life activity. The Court's conclusion is supported by the plaintiff's own testimony. The plaintiff's job history, the nature of the physical requirements of the positions plaintiff has held in the past and the undisputed fact that the plaintiff admits his life is not severely restricted by his epilepsy, requires the Court to find that the plaintiff is not substantially limited in any major life activities under the jurisprudence set forth earlier in this opinion. Thus, the Court finds that the plaintiff is not "a qualified in individual with a disability" under the ADA.

### b. Plaintiff was not "regarded as" disabled by his employer

The plaintiff also alleges in the alternative that should the Court not find him "disabled" under the ADA, he is still entitled to recover under the ADA because the defendant regarded him as disabled when it decided to discharge him. This argument is without merit and is not supported by the facts and law of this case.

In implementing its regulations, the Equal Employment Opportunity Commission (EEOC) defines three situations or contexts in which a plaintiff qualifies for the ADA's protection under the "regarded as" prong. The Fifth Circuit summarized these situations as follows:

> "One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." [53]

The Fifth Circuit's decision in *Deas v. River West, L.P.*[54] is directly applicable to the case now pending before this Court. In *Deas*, the plaintiff had responded to a classified advertisement which announced a job opening with the substance abuse program run by Alternative Addiction Treatment Concepts. The plaintiff had applied for a position as an "Addiction Technician." Although the plaintiff disclosed in the health history questionnaire that she had suffered from epilepsy in the past, the defendant hired the plaintiff for this position. [55]

The plaintiff's co-workers observed her suffer a *petit mal* or "absence" seizure twice in one working day during which the plaintiff became verbally unresponsive and seemed to lose awareness of her surroundings for a brief time. Thereafter, the medical director for the substance abuse program concluded that plaintiff's seizures were not well controlled and terminated

---

50. *See Id.*, at p. 24, lines 8–9; lines 24–25.

51. *See Id.*, at 25–26.

52. *See Id.*, at p. 27.

53. *Deas v. River West, L.P.*, 152 F.3d 471, 475 (5th Cir.1998), *quoting Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir.1996).

54. *Deas*, 152 F.3d 471 (5th Cir.1998).

55. *Id.*, at 474.

the plaintiff because she could not perform the functions of an addiction technician.[56]

The plaintiff sued the defendant in state court alleging that her discharge violated the ADA. The defendants timely removed the case to federal court. Thereafter, the parties consented to trial before the Magistrate Judge. Defendant then filed a motion for summary judgment. The Magistrate Judge found that the plaintiff was not disabled under the ADA and granted defendant's motion for summary judgment The plaintiff appealed the Magistrate Judge's decision to the Fifth Circuit.[57]

After first noting that the plaintiff in *Deas* never contended that she was "actually" disabled, the Fifth Circuit considered whether plaintiff was nevertheless regarded as disabled and discharged for this reason. Thus, plaintiff's claim under the ADA fell under the "regarded as" prong of the statute's definition of "disability." [58]

The Fifth Circuit noted that

[T]he question on this appeal boils down to whether Deas produced sufficient evidence for a reasonable trier of fact to find that Dr. Dixon perceived her seizures as constituting a substantially limiting impairment. In other words, to have made a *prima facie* showing of disability, Deas must have produced sufficient evidence for a reasonable trier of fact to conclude that Dr. Dixon perceived her as having an "impairment" *and* that this impairment, if it existed as perceived by Dr. Dixon, would have substantially limited one or more of Deas' major life activities.[59]

The court stated that, "[c]onsidered in the light most favorable to Deas, the summary judgment record clearly contains sufficient evidence to establish that Dr. Dixon regarded Deas as having an impairment." [60] However, the Fifth Circuit noted that "the more difficult question is whether Deas produced summary judgment evidence sufficient for a reasonable trier of fact to find that Dr. Dixon regarded Deas' seizures as substantially limiting a major life activity." [61]

The Fifth Circuit rejected the plaintiff's contention that Deas' seizures be classified as a disability *per se* finding that "[w]e have consistently emphasized that an individualized, case-by-case determination of disability best achieves the purposes of the ADA." [62] The court also rejected plaintiff's argument that Dr. Dixon perceived Deas to be substantially limited in her ability to see, hear, or speak.[63]

The Fifth Circuit also addressed plaintiff's contention that the defendant regarded her to be substantially limited in the major life activity of work. In analyzing this argument, the court noted that " 'the inability to perform a single, particular job does not constitute substantial limitation in the major life activity of working.' " [64] Accordingly, the court found that "Dr. Dixon's belief that Deas was incapable of fulfilling the essential functions of an 'addiction technician' in a hospital substance abuse treatment unit does not establish that she regarded her as being substantially limited in her ability to work in general." [65] The Fifth Circuit further held

56. *Id.*, at 475.

57. *Id.*

58. *Id.*

59. *Id.*, at 476. (Emphasis in original).

60. *Id.*

61. *Id.*

62. *Id.*, at 478.

63. *Id.*, at 480.

64. *Id.*, at 481, *quoting Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995).

65. *Id.*, at 481.

that "[t]here is no evidence that either [Dr. Dixon or Peggy Miller] thought that Deas could not work safely in either 'a class of jobs or a broad range of jobs in various classes.' "[66]

■ The *Deas* decision is directly applicable to the plaintiff's argument in this case. For the reasons set forth in *Deas,* this Court finds that Landry has failed to provide evidence sufficient to show that the defendant perceived the plaintiff as "disabled" based on his epileptic seizures, and that the employer's "misperception" was accompanied by a belief that the plaintiff's "disability" was a substantially limiting one.

In fact, unlike the defendants in the case at bar, the defendants in *Deas* actually conceded that the plaintiff was discharged based on her impairment, *i.e.,* the epileptic seizures that affected her ability to function according to the job duties of her position. However, the Fifth Circuit emphasized that the inquiry is not whether the plaintiff can perform the job duties of the specific position at issue, but whether the plaintiff is impaired such that she could not perform in "a class of jobs or a broad range of jobs in various classes."

Thus, even if the defendant in this case conceded that it discharged the plaintiff because it determined that epileptic seizures constituted an impairment which would preclude this plaintiff from performing the job duties of a scaffolding safety technician, this would still not rise to the level of proof required to satisfy the "regarded as" prong of the ADA. The plaintiff must show that the defendant not only believed that the impairment of epileptic seizures substantially limited this plaintiff in this particular position, but in a broad range of jobs and other major life activities. Here, the defendants not only dispute Landry's contention that his epilepsy was the cause for his discharge, it also contends that Landry was discharged solely on the basis of his lack of experience and poor job performance.

*Arnold v. City of Appleton, Wisconsin* [67] is relevant to the Court's consideration of defendant's motion for summary judgment because of its similarities to the case at bar. In *Arnold,* an applicant for a firefighter's position who had suffered from epilepsy brought a disability discrimination suit against the City under the ADA. The facts of the case revealed that based on the plaintiff's initial interviews and completion of a written examination, the defendant made plaintiff a conditional offer of employment as a firefighter, subject to plaintiff's successful completion of medical and psychological examinations and a physical agility test.[68]

The *Arnold* defendant learned from these tests that the plaintiff had epilepsy and was being treated with Dilantin. Based on the recommendations of several doctors, the defendant in *Arnold* concluded that the plaintiff could not perform the job duties required of a firefighter, and withdrew the conditional offer of employment to the plaintiff.[69] The plaintiff filed suit against the City under the ADA arguing that he had a physical impairment affecting his nervous system and/or that the City regarded him as having a physical impairment which substantially limited his ability to work as a firefighter.

After being informed by the court of the Supreme Court decisions in *Sutton,*[70] *Murphy,*[71] and *Albertsons,*[72] the plaintiff con-

---

66. *Id.*

67. 97 F.Supp.2d 937 (E.D.Wis.2000).

68. *Id.,* at 939.

69. *Id.,* at 941.

70. *Sutton, supra.*

71. *Murphy, supra.*

72. *Albertsons, supra.*

ceded that he did not suffer from an actual disability under the ADA, but still asserted a claim under the ADA based on a record of impairment and a "perceived disability." [73] The court addressed Arnold's claim under the "regarded as" prong of the ADA and found that "it is not enough for the plaintiff to show that the defendant was aware of his impairment. Rather, the plaintiff must show that the defendant 'knew of the impairment and believed that [he] was substantially limited because of it.'" [74]

The court also rejected plaintiff's claim based on his ability to work and found that "[t]o prevail on his § 12102(2)(C) claim that he was discriminated against by the defendant because it believed he was disabled, the plaintiff must show that the defendant believed that he was unable to work in a particular class or broad range of jobs as required in the definition of disability under § 12102(2)(A)." [75]

The parties in Arnold did not dispute plaintiff had epilepsy. The court noted that the plaintiff's assertion, "without further explanation," that the defendant perceived him as being substantially limited based not just on working, but on all major life activities, was unsupported by the record. [76] The court disposed of this argument, stating as follows:

[T]he plaintiff has provided no evidence to demonstrate that the defendant believed that his impairment would limit his ability to work at a broad range of jobs or that he was "disabled" within the meaning of the ADA. Even if the court were to accept the plaintiff's contention that the defendant believed that he could not perform the job of firefighter because of his epilepsy, the perceived inability to perform one job is not sufficient to establish that the plaintiff is substantially limited in the major life activity of working. [77]

In this case, there is no evidence that the defendant viewed the plaintiff's impairment as constituting "a significant barrier to [his] employment, taking [his] unique circumstances into account." [78] It is not enough for the plaintiff to demonstrate that he suffers from epilepsy . . . [79]

The reasoning of the Arnold court is applicable to the facts of the present case. Landry's allegation that the defendant perceived him to be substantially limited in major life activities is not supported by any evidence in the record. The fact that the plaintiff's supervisor stated that seizures were "more serious" than a stomachache [80] does not support plaintiff's position, especially considering the direct testimony of plaintiff's direct supervisors which confirms that they did not believe that the plaintiff's epilepsy was the reason he could not perform his job duties. [81]

Further, plaintiff's reliance on Otting v. J.C. Penney Company [82] is misplaced be-

73. Arnold, 97 F.Supp.2d at 942.

74. Id., at 948, quoting Skorup v. Modern Door Corp., 153 F.3d 512, 515 (7th Cir.1998).

75. Id., at 948, citing Staceen M. Sinkler v. Midwest Property Management Limited Partnership, 209 F.3d 678, 687 (7th Cir.2000); see also, Skorup, 153 F.3d at 514.

76. Id.

77. Id.,citing Skorup, 153 F.3d at 514.

78. Id.,quoting Skorup, 153 F.3d at 514.

79. Id.,citing Krocka, 203 F.3d at 512–513.

80. See, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgments p. 8, quoting Deposition of William Rogers, p. 47.

81. See Deposition of William Rogers, pp. 71–72.

82. 223 F.3d 704 (8th Cir.2000).

cause that case is easily distinguishable from the case at bar. First, in *Otting,* the Court of Appeals for the Eighth Circuit reviewed a district court's judgment as a matter of law overturning a jury's award of punitive damages in a disability discrimination case. The matter was not before the court on a grant or denial of summary judgment.

Second, the plaintiff in the *Otting* case suffered far more severe problems associated with her epilepsy than the plaintiff in the present case. The court noted that "Otting's seizures, although sporadic, occurred frequently enough that she was prohibited by law from driving and could not take baths by herself for risk of drowning if a seizure occurred. When, approximately two or three times monthly, Otting suffered a seizure, she became unable to see, hear, speak, walk or work." [83] The *Otting* plaintiff's circumstances were so severe that she underwent brain surgery and an intense medication regimen to alleviate some of the problems associated with her epilepsy. Clearly, Landry's condition cannot be reasonably compared to the plaintiff in *Otting.*

The plaintiff also asserted in his opposition [84] that the *Deas* case is inapplicable to this case, and that the *Otting* case is directly on point. The Court's discussion of these cases shows that plaintiff's argument is without merit. In fact, the Eighth Circuit's opinion in *Brunke v. Goodyear Tire and Rubber Company* [85] reinforces this Court's opinion of the inapplicability of *Otting* to this case. In *Brunke,* the plaintiff was discharged by the defendants and the plaintiff brought suit under the ADA. The defendants contended the plaintiff was discharged based on his work performance and the confrontations and insubordination of the plaintiff. The plaintiff alleged that he was discharged based on the perceived disability of his epilepsy. [86]

The district court entered summary judgment in favor of the employer, and the Eighth Circuit affirmed the lower court's decision. The *Brunke* plaintiff relied upon the *Otting* case in support of his position. The Eighth Circuit was quick to point out that "the summary judgment record in this case is unlike the trial record in *Otting v. J.C. Penney Co.,* 223 F.3d 704, 709–11 (8th Cir.2000), where we affirmed a jury verdict in favor of an ADA plaintiff whose epileptic seizures were *not under control* at the time of her termination despite surgery and medication." [87]

Similarly, Landry's epilepsy is currently controlled by medication, and the plaintiff admits that seizures are uncommon and his life is relatively unrestricted by the epilepsy. Thus, it is clear that *Otting* is inapplicable to the case at bar.

## 2. Plaintiff failed to carry his burden of proof in establishing a *prima facie* case of disability discrimination

The record in this case simply does not support the plaintiff's assertion that the defendant regarded the plaintiff's impairment of epilepsy as substantially limiting the plaintiff's major life activities. In fact, the deposition testimony of both the plaintiff and the defendant's representatives convinces the Court that the defendant did not believe that Landry was substantially limited in any major life activity because of the plaintiff's epilepsy. Further, the defendant has offered a legitimate, non-dis-

---

83. *Id.,* at 710.

84. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, pp. 9–10.

85. 344 F.3d 819 (8th Cir.2003).

86. *Id.,* at 821.

87. *Id.,* at 822.

criminatory reason for plaintiff's discharge based on his poor job performance and/or his lack of experience as a scaffolding safety technician.

Regardless of the factual disputes over the cause of plaintiff's discharge, the plaintiff has failed to carry his burden of proof in establishing a *prima facie* case of disability discrimination. The Court finds that although the epilepsy from which plaintiff suffers is an impairment, his major life activities are not substantially limited such that he is "disabled" under the ADA. Considering plaintiff's "regarded as" claim, it is insufficient for plaintiff to allege that the defendant discharged him based on his impairment without proof that the defendant believed that the plaintiff's impairment of epilepsy substantially limited his major life activities. The plaintiff has failed to present any evidence to support this contention. Thus, plaintiff has failed to carry his burden, and defendant's motion for summary judgment shall be granted.

### C. Plaintiff's Claim under the Family & Medical Leave Act ("FMLA")

The plaintiff concedes in his opposition that he has filed Amended Complaint in which he dismissed his FMLA claim.[88] Since the FMLA claim has been dismissed, there is no need for the Court to further discuss this claim and the defendant's motion for summary judgment on the FMLA claim is now moot.

### D. Plaintiff's claims under Louisiana law

The plaintiff has also alleged claims under Louisiana discrimination law. The Court declines to consider the plaintiff's state disability discrimination claims pur-

suant to 28 U.S.C. § 1367. Therefore, the claims will be dismissed without prejudice.

### III. Conclusion

For the reasons set forth above, the Court finds that the plaintiff is not "disabled" under the ADA, and was not "regarded as" disabled by the defendant. Thus, the Court finds that summary judgment should be granted as a matter of law under the facts of this case on plaintiff's ADA claims. Plaintiff's state law claims are dismissed without prejudice.

Judgment shall be entered accordingly.

**88.** Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 1.